WACHOVIA SECURITIES, LLC
& Roderick Chisholm,
Appellants,

v.

Rocky EMERY, Appellee.

In re Wachovia Securities, LLC and
Roderick Chisholm, Relators.

Nos. 01–05–00305–CV, 01–05–00448–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 23, 2005.

S. Jonathan Silverman, Gardner, Carton & Douglas LLP, Chicago, IL, Daniel K. Hedges, Porter & Hedges, L.L.P., Susan K. Hellinger, Houston, TX, for Appellants.

Neal S. Manne, Brian Douglas Melton, Susman Godfrey L.L.P., Houston, TX, Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

In dual proceedings, appellants/relators, Wachovia Securities, LLC and Roderick Chisholm ("relators"), challenge the trial court's order that denied their motion to compel arbitration against appellee/real party in interest, Rocky Emery ("Emery").[1] In one issue, relators contend that the trial court erroneously denied their motion to compel arbitration. We dismiss the interlocutory appeal for want of jurisdiction and conditionally grant the petition for writ of mandamus.

## Background

Rocky Emery began his career in the securities industry as a registered representative of PaineWebber in 1993. Before starting his employment with PaineWebber, Emery was required to execute a Uniform Application for Securities Industry Registration or Transfer ("U–4") which contained an arbitration provision. On July 13, 2001, Emery resigned from PaineWebber and began working for First Union, Wachovia's predecessor.[2] Emery then signed a second U–4 which contained essentially the same arbitration provision. Pursuant to the arbitration provisions, Emery agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the SROs[3] indicated in Item 11 [i.e., the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE)] as may be amended from time to time."

After Wachovia terminated Emery's employment on September 21, 2004, Emery filed a breach-of-contract claim against Wachovia and a negligent misrepresentation claim against Chisholm, his branch manager at Wachovia. A little over a week later, relators filed a motion to compel arbitration. On January 10, 2005, Emery amended his petition by dropping the

---

1. The underlying lawsuit is *Rocky Emery v. First Union Securities, Inc., Wachovia Securities, LLC and Roderick Chisholm Individually*, No. 2004–64094 (165th Dist. Ct., Harris County, Texas).

2. First Union was acquired by Wachovia in September 2001.

3. SRO is an acronym for Self–Regulatory Organization.

breach-of-contract claim and adding a fraud and negligent misrepresentation claim against Wachovia and Chisholm and a statutory libel and business-disparagement claim against Chisholm.

In his amended petition, Emery alleged that the defendants had made "false, material misrepresentations" to induce him to leave his prior employment at Paine-Webber and join Wachovia. Specifically, Emery claimed that he had been promised a computer platform for a Stock Option Financing (SOF) business he had developed while at PaineWebber in order to induce him to leave PaineWebber and bring other employees in the SOF group with him to Wachovia, but that Wachovia had not kept its promises to get the SOF Platform up and running. Emery further alleged that Chisholm had misrepresented to the NYSE and NASD in 2003 that Emery had engaged in unauthorized business activities while employed by Wachovia, that Wachovia was investigating these activities, and that Emery had been terminated by Wachovia. Emery also filed a response to the motion to compel arbitration in which he argued that the agreement to arbitrate did not apply to his claims because his claims were based on conduct that occurred before he signed the second U-4.

Following a hearing, the trial court denied relators' motion to compel. Relators now challenge the trial court's order via an interlocutory appeal and a petition for writ of mandamus.

### Appeal

█ The Texas Arbitration Act ("TAA") and the Federal Arbitration Act ("FAA") provide alternative procedural vehicles for relief. *In re Educ. Mgmt. Corp., Inc.,* 14 S.W.3d 418, 425 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). If the trial court denies arbitration based on the TAA,

the order is subject to interlocutory appeal. Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(1) (Vernon 2005). Relief from a denial of arbitration under the FAA, however, must be pursued by mandamus. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex.1996).

The trial court did not expressly determine whether the FAA or the TAA applies. *See* 9 U.S.C. §§ 1–16 (2000); Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–.098 (Vernon 2005). In addition, the U-4 does not state whether arbitration is governed by the FAA or the TAA. As a threshold matter, we first determine which act applies.

█ The FAA governs a written arbitration clause in any contract "evidencing a transaction involving commerce...." *See* 9 U.S.C. § 2. This provision extends to all transactions affecting commerce and is coextensive with the reach of the Commerce Clause of the United States Constitution. *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 271–81, 115 S.Ct. 834, 838–43, 130 L.Ed.2d 753 (1995); *see In re L & L Kempwood Assocs.,* 9 S.W.3d 125, 127 (Tex.1999). A contract "evidenc[es] a transaction involving commerce" if it in fact turns out to involve interstate commerce. *Allied–Bruce,* 513 U.S. at 277–81, 115 S.Ct. at 841–43.

█ The FAA displaces state law only to the extent the state law conflicts with the FAA's purpose of enforcing the parties' contractual obligation to arbitrate. *Volt Info. Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 477–78, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 378 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). Thus, if the arbitration clause is enforceable under the FAA, an analysis of enforceability under the TAA is unnecessary. *See In re Anaheim Angels Baseball*

*Club, Inc.*, 993 S.W.2d 875, 877 n. 1 (Tex. App.-El Paso 1999, orig. proceeding [mand. denied] ).

■ The sale of securities has been held to involve interstate commerce. *See Eurocapital Group, Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (recognizing that account agreement concerning sale of securities involved interstate commerce); *Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 319 (Tex.App.-Dallas 1999, no pet.) (same); *see also Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir.1995) (reasoning that U–4 registration involved interstate commerce because it was contract involving sale of securities).

The underlying proceedings in this case involve an employment dispute in the securities industry which is partially governed by an arbitration agreement in a U–4. Cases that involve U–4 arbitration agreements are consistently construed as affecting interstate commerce. *See In re Merrill Lynch, Pierce, Fenner & Smith Inc.*, 131 S.W.3d 709, 712 (Tex.App.-Dallas 2004, orig. proceeding); *In re Scott*, 100 S.W.3d 575, 579 (Tex.App.-Fort Worth 2003, orig. proceeding); *Williams*, 56 F.3d at 659 (reasoning that U–4 registration involves interstate commerce because it is contract involving sale of securities); *see also BWI Cos. v. Beck*, 910 S.W.2d 620, 622–23 (Tex. App.-Austin 1995, orig. proceeding [leave denied] ) (arbitration agreement between employer and employee involved interstate commerce, even though employee worked and made deliveries only in Texas, because employer had facilities in Texas and other states). Thus, we conclude that the transaction between Emery and the relators affected interstate commerce and that the FAA applies.

Because the FAA applies, mandamus, and not interlocutory appeal, is the procedural vehicle for the relief that relators request. Accordingly, we dismiss the relators' interlocutory appeal and consider the merits of the petition for writ of mandamus.

### Mandamus

#### *Standard of Review*

■ Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a legal duty when there is no adequate appellate remedy at law. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999). When a trial court erroneously grants a party's motion to compel arbitration, the movant has no adequate remedy at law and is entitled to a writ of mandamus. *See In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex.2001). We review the trial court's order for abuse of discretion. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992); *Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., Inc.*, 73 S.W.3d 545, 548 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (combined appeal & orig. proceeding). A trial court abuses its discretion when it errs in determining what the law is or in applying the law to the facts. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703 (Tex. 1998); *Trico Marine Servs.*, 73 S.W.3d at 548. The trial court's order does not state its grounds for denying the relators' motion to compel arbitration. Thus, we review the grounds stated in the relators' motion and reverse the trial court's order if any of the grounds are meritorious. *See In re H.E. Butt Grocery*, 17 S.W.3d at 367.

#### *Enforceability of 2001 Agreement to Arbitrate*

In their mandamus petition, relators argue that the trial court erred in denying their motion to compel arbitration because they submitted an agreement to arbitrate

and Emery's claims were within the scope of the agreement.

▮▮▮ Whether an enforceable agreement to arbitrate exists is a legal question subject to de novo review. *In re Kellogg Brown & Root,* 80 S.W.3d 611, 615 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding). Although an arbitration agreement does not have to assume any particular form, the language of the agreement must clearly indicate the intent to arbitrate. *See Massey v. Galvan,* 822 S.W.2d 309, 316 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Without an agreement to arbitrate, arbitration cannot be compelled. *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994) (orig. proceeding). In deciding whether to compel arbitration, the trial court is entitled to rely on affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin,* 842 S.W.2d at 269.

▮▮▮ Under both the TAA and the FAA, a party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and to show that the claims asserted fall within the agreement's scope. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon 2005); *In re Kellogg Brown & Root,* 80 S.W.3d at 615. If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement. *See In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999); *Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 835 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding).

To support their motion to compel arbitration, relators relied on the arbitration clause found within the 2001 U-4 that Emery signed. The U-4 provides,

5. I agree to arbitrate any dispute, claim or controversy that may arise be-

tween me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Emery neither disputes that this clause mandates arbitration, nor disputes that he is a signatory to this clause. We conclude that relators presented a valid arbitration agreement. Thus, we turn to whether Emery's claims fall within the scope of the arbitration agreement.

### *Scope of 2001 Arbitration Agreement*

▮▮▮ Both federal and state law strongly favor arbitration. *Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding). Under the FAA, any doubts as to whether a plaintiff's claims fall within the scope of the arbitration agreement must be resolved in favor of arbitration. *Cantella,* 924 S.W.2d at 944; *Prudential Sec.,* 909 S.W.2d at 899. "[A] court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec.,* 909 S.W.2d at 899 (quoting *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir. 1990)). In determining whether a claim falls within the scope of an arbitration clause, we must focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *Id.* at 900; *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 195 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding).

The arbitration clause in the 2001 U-4 requires that Emery arbitrate "any dispute, claim or controversy that may arise

between me and my firm ... or any other person, that is required to be arbitrated under the rules" of the NYSE or NASD. Emery argues (1) that his claims against Wachovia arose before he signed the July 13, 2001 arbitration agreement and are therefore outside its scope and (2) that claims by a registered representative, like himself, against another registered representative, like Chisholm, are not arbitrable under NASD or NYSE rules of arbitration.

*Accrual of Emery's Claims*

Emery first argues that his pre-July 13, 2001 conduct is not arbitrable. To support his contention, he relies on *Hendrick v. Brown & Root, Inc.* 50 F.Supp.2d 527 (E.D.Va.1999). Hendrick worked for Brown & Root at four different time periods. *Id.* at 528. In his third period of employment, October 19, 1988 through May 20, 1993, and before he was terminated on May 20, 1993, Brown & Root notified Hendrick that a dispute resolution plan would take effect on June 15, 1993. *Id.* at 529. After his fourth period of employment had ended, Hendrick discovered that Brown & Root had used his name unlawfully during his third period of employment, and he filed suit. *Id.* at 530. Brown & Root moved for arbitration, claiming that Hendrick's cause of action was subject to arbitration pursuant to his employment contract during his fourth period of employment, which contained the dispute resolution plan. *Id.* at 531. The court of appeals stated that the threshold issue was whether the fourth contract and the incorporated dispute resolution plan evinced an intent to arbitrate an employee's claims that had accrued before execution of the fourth contract. *Id.* at 533. The court found that at the time of the accrual of Hendrick's cause of action the employment contract contained no agreement to arbitrate. *Id.* at 533–34.

The facts of this case are entirely different. Unlike *Hendrick,* Emery had an arbitration agreement with Wachovia throughout the time of his employment there. The plain language of the agreement requires Emery to arbitrate "*any dispute, claim or controversy that may arise between me and my firm ... or any other person, that is required to be arbitrated under the rules*" of the NYSE or NASD. (Emphasis added.) Emery's petition alleges claims arising out of a controversy between himself as an employee of Wachovia and his employer and branch manager. There is no time limit in the arbitration clause as to when the claims must have accrued. Thus, Emery's claims, by their terms, fall within the scope of his July 13, 2001 arbitration agreement with Wachovia.

We also observe that none of Emery's claims accrued until after he was employed by Wachovia and had signed the arbitration agreement. Emery's claims arise out of Wachovia's alleged failure to keep promises made to induce him to leave Paine-Webber and out of Chisholm's and Wachovia's alleged misrepresentations to the NYSE, NASD, and SEC relative to Emery's outside business activities during his employment at Wachovia and his termination by Wachovia. Emery does not allege any injury prior to Wachovia's alleged failure to carry through on its promises to provide him an SOF Platform while he was employed by Wachovia. Accordingly, *Hendrick* does not apply to the case at bar.

We conclude that Emery's claims fall squarely within the scope of the July 13, 2001 U–4s arbitration clause, assuming that those claims are indeed arbitrable under the rules of the NASD or NYSE. *See Prudential Sec.,* 909 S.W.2d at 900; *AutoNation,* 105 S.W.3d at 195.

*Arbitrability of Claims Among Associated Persons*

 Emery also argues that his claims against Chisholm are not subject to arbitration under NASD or NYSE rules. The arbitration agreement in the U–4 incorporates by reference the rules of the SROs referred to in Item 11 of the U–4. Item 11 of the U–4 indicates that Emery is registered with the NASD and the NYSE. The rules of these two organizations govern which disputes must be resolved by arbitration. *See Metropolitan Life Ins. Co. v. Lindsay,* 920 S.W.2d 720, 722 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Smith Barney Shearson, Inc. v. Finstad,* 888 S.W.2d 111, 115 (Tex.App.-Houston [1st Dist.] 1994, no writ).

The NASD Code of Arbitration Procedure provides in relevant part:

**10101 Matters Eligible for Submission**

This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company;

(a) between or among members;

(b) between or among members and associated persons;

(c) between or among members or associated persons and public customers, or others; and

(d) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledgees, or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.

**10201 Required Submission**

(a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated persons(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

It is undisputed that Wachovia is a member of the NASD and that, as registered representatives of a member firm, Emery and Chisholm are both persons "associated with a member."

Wachovia argues that the plain language of Rule 10101(b) provides for arbitration between Emery, an associated person, and Chisholm, another associated person. Emery argues that the arbitration agreement does not cover disputes solely between associated persons. We agree with Wachovia.

Emery relies on *Wojcik v. Aetna Life Ins. and Annuities Co.,* 916 F.Supp. 729,

733 (N.D.Ill.1996). In *Wojcik*, the federal district court held that a *prior* version of the NASD rules did not encompass disputes solely between associated persons. 916 F.Supp. at 733. The current version plainly does encompass such disputes. *See* NASD Code of Arb. Proc. 10201(a)(3); *see also In re Scott*, 100 S.W.3d 575, 579–82 (Tex.App.-Fort Worth 2003, orig. proceeding) (compelling arbitration of claims by one associated person against another pursuant to NASD rules 10101 and 10201); *Williams v. Imhoff*, 203 F.3d 758, 764–65 (10th Cir.2000) (holding that plaintiffs' claims were subject to arbitration because plaintiffs were associated persons and that defendants, as trustees of member's stock plan, were either associated persons or "others" under rule 10101(c)); *Singer v. Gaines*, 896 So.2d 851, 853–54 (Fla.Dist.Ct. App.2005) (holding that NASD rules contemplate arbitration among associated persons).

■ Once a party seeking to compel arbitration establishes that an agreement exists under the FAA and that the claims raised are within the agreement's scope, the trial court "has no discretion but to compel arbitration and stay its proceedings pending arbitration." *Cantella*, 924 S.W.2d at 944. Accordingly, the trial court erred by denying relators' motion to compel arbitration pursuant to the FAA.

### Conclusion

We conclude that the trial court improperly denied relators' motion to compel arbitration. A party who is erroneously denied the right to arbitrate under the FAA has no adequate remedy at law, and mandamus relief is appropriate. *Id.* at 945. Thus, we conditionally grant the writ of mandamus in cause no. 01–05–00448–CV and direct the trial court to order that relators' claims proceed to arbitration under the FAA. We dismiss the appeal in cause no. 01–05–00305–CV for want of jurisdiction.