**In re JIM WALTER HOMES, INC., Relator.**

**In re Sarah Cryer, Individually and on Behalf of Mildred Wootan, Relators.**

**Nos. 14–06–00635–CV, 14–06–00792–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 7, 2006.

Catherine C. Kays, Theodore J. Riney, Dallas, for appellant, in No. 14-06-00635-CV.

Harvey Hayden Holiman, Freeport, for appellant in No. 14-06-00792-CV.

Harvey H. Holiman, Freeport, for appellee in No. 14-06-00635-CV.

Theodore J. Riney, Dallas, for appellee in No. 14-06-00792-CV.

Panel consists of Justices FOWLER, EDELMAN, and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

In this original proceeding, relator, Jim Walter Homes, Inc., seeks a writ of mandamus ordering respondent, the Honorable Robert May, presiding judge of the 149th Judicial District Court of Brazoria County, Texas, to vacate the portion of his June 16, 2006 order that denied arbitration. Real parties Sarah Cryer, individually and on behalf of Mildred Wooten (collectively "plaintiffs"), also seek a writ of mandamus. Plaintiffs, however, request that the court be ordered to vacate the portion of the June 16 order that compelled arbitration. We have reviewed the arbitration clause and hold that arbitration of all the claims plaintiffs have asserted against Jim Walter Homes is required, so we conditionally grant Jim Walter Homes's petition. Because we are without jurisdiction to review an order compelling arbitration under the Federal Arbitration Act, we dismiss plaintiffs' petition for lack of jurisdiction.

## I. Background

Plaintiffs contracted with Jim Walter Homes to build a home. The contract between plaintiffs and Jim Walter Homes contains a broad arbitration clause that plaintiffs and Jim Walter Homes independently executed. The arbitration clause provides:

> The parties agree that any controversy (whether asserted as an original claim, counterclaim, cross claim or otherwise) arising out of or relating to this Agreement, or the breach thereof, or any negotiations leading up to the making of this Agreement, or any extensions of credit related to this Agreement, or the House that is the subject of this Agreement, or any insurance sold under or in connection with this Agreement, or any relationship resulting from any of the foregoing, whether asserted in tort, contract or warranty, or as a federal or state statutory claim, and whether arising before, during or after the performance of this Agreement, shall be settled under this Arbitration Agreement in accordance with the procedures specified below.

Jim Walter Homes Exhibit "D" Arbitration Agreement.

Plaintiffs were dissatisfied with the home that Jim Walter Homes built. They filed suit against Jim Walter Homes, alleging the home was defective. Plaintiffs specifically claimed that Jim Walter Homes made errors in framing the home, with the result that the home's foundation was "extremely defective" and the home itself was "wholly defective." Plaintiffs also claimed that the repairs that Jim Walter Homes eventually made to the home were defective and that both plaintiffs were physically injured because of Jim Walter Homes's negligent repair efforts.[1] Based on these factual allegations, plaintiffs asserted claims for breach of contract, violation of the Deceptive Trade Practices Act ("DTPA"), fraud, negligence, negligent misrepresentation, and negligent hiring and supervision. Among other things, plaintiffs sought damages for personal injury.

Jim Walter Homes moved to compel arbitration of all of plaintiffs' claims under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). After conducting a hearing, but without receiving evidence, the trial court ordered arbitration of all contract-related claims, but held that the claims for personal injury were not arbitrable. The trial court also stayed all proceedings pending arbitration of the contract claims. Jim Walter Homes filed a petition for mandamus relief challenging this ruling, arguing that the court should have referred *all* of plaintiffs' claims to arbitration. Plaintiffs responded, but also filed their own petition for writ of mandamus, claiming that *none* of their claims should be referred to arbitration.

## II. Analysis

We have jurisdiction to review the trial court's denial of arbitration, though not the order compelling arbitration. In reviewing the denial of arbitration, we address Plaintiffs' claims that (1) mandamus is not the appropriate method for review of the trial court's order; (2) the trial court erred by failing to conduct an evidentiary hearing; (3) the Jim Walter Homes limited

---

**1.** Plaintiffs claimed that Cryer fell through a section of removed flooring, suffering injury to "her wrist, back and body generally," and that Wooten injured her arm when a kitchen cabinet door fell off its hinges.

warranty negates the arbitration clause; (4) Jim Walter Homes has waived its right to arbitrate; and (5) Jim Walter Homes's petition should be barred by laches or "unclean hands."

## A. Jurisdiction to Review Arbitration Rulings

■ We first address our jurisdiction to review orders on arbitration under the Federal Arbitration Act. Orders ruling on arbitration are typically interlocutory and often fail to give rise to a final judgment. Courts have therefore developed rules governing review of these orders. When a case involves the Federal Arbitration Act, orders denying motions to compel arbitration are reviewable via mandamus, while orders compelling arbitration are not. *See In re Palacios*, No. 05–0038, 2006 WL 1791683, at *1–2, —— S.W.3d ——, —— (Tex. June 30, 2006). As the Texas Supreme Court recently stated:

> We recognize there is some one-sidedness in reviewing only orders that deny arbitration, but not orders that compel it. Yet both the Federal and Texas acts leave little uncertainty that this is precisely what the respective legislatures intended.

*Id.* at *2, at ——.

■ In this case, the trial court ordered arbitration of some claims but not others, then stayed proceedings pending arbitration. The court's order is not final

and appealable, but is unquestionably reviewable by mandamus. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). ("An order denying arbitration under the Federal Act meets neither the rule [of finality] nor the statutory exceptions [for interlocutory appeals].").[2] As the supreme court noted in *Palacios*, "[w]e have held recently and repeatedly that an order denying arbitration under the FAA is reviewable by mandamus." 2006 WL 1791683, at *1 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) and *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69–70 (Tex.2005)). Clearly, we may review via a mandamus proceeding the trial court's denial of arbitration.[3]

■ By contrast, we do not have jurisdiction to review the trial court's order compelling arbitration. *Palacios*, 2006 WL 1791683, at *1–2. Orders compelling arbitration under the FAA ordinarily are not reviewable, by mandamus or otherwise, until a judgment has become final. *See id.* As the supreme court explained, state appellate courts, like federal courts, typically do not have jurisdiction to review an order staying proceedings and compelling arbitration. The court reasoned that, even given the state court mandamus procedure, we must follow the United States Supreme Court's holding that orders compelling arbitration are not reviewable because, where the underlying case is stayed, "there can be no review until final judg-

---

**2.** Contrary to plaintiffs' claims, it is not necessary for Jim Walter Homes to establish an inadequate remedy by appeal. Orders denying arbitration are reviewable by mandamus because the supreme court has held as a matter of law that there is no adequate appellate remedy when a party "would be deprived of the benefits of the arbitration clause it contracted for...." *Tipps*, 842 S.W.2d at 272.

**3.** Plaintiffs' claim that Jim Walter Homes failed to comply with appellate deadlines ignores the fact that Jim Walter Homes could not have filed an ordinary appeal from the court's order. Ordinary appellate deadlines did not apply because the court's order was interlocutory.

ment." *Id.* (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 87, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).[4]

■ Following *Palacios*, we dismiss plaintiffs' petition for mandamus for lack of jurisdiction. The trial court stayed the underlying proceedings pending final judgment, so there is no right of mandamus review for the order compelling arbitration. *Palacios*, 2006 WL 1791683, at *1–2. In addition, there has been no showing that the trial court erred by granting the stay of proceedings pending arbitration, and given our disposition of plaintiffs' remaining claims, such a showing cannot be made on the facts presently before us.

## B. Plaintiffs' Claims Are Arbitrable.

■ A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006). "Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovants' claims." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather

than the legal causes of action asserted." *Id.* at 754. Of course, questions of scope are controlled by the strong federal presumption favoring arbitration, which requires a court to resolve any doubts about scope in favor of arbitration. *Id.* at 753.

■ All of plaintiffs' claims relate to their "defective home" factual allegations, and accordingly fall within the scope of the broad arbitration clause plaintiffs signed. Courts recognize the use of "any" dispute "arising out of or relating to" as broad language that expressly includes tort and other claims relating to the contractual relationship. *See Dewey v. Wegner*, 138 S.W.3d 591, 601 & n. 20 (Tex. App.-Houston [14th Dist.] 2004, orig. proceeding) (recognizing this language as "broad" and holding statutory and tort claims arbitrable where they related to the agreement containing the arbitration clause); *see also FirstMerit*, 52 S.W.3d at 754 (holding tort claims arbitrable under arbitration clause that expressly applied to tort claims). It is difficult to imagine that the arbitration clause at issue here could be any broader. By its express terms, the clause requires arbitration of claims arising out of or relating to "the House that is the subject of this Agreement," whether those claims are "asserted in tort, contract or warranty . . . ." This language obviously applies to plaintiffs' claims, even those involving personal injury. On this basis, the trial court should have ordered arbitration of all claims, because "[o]nce the trial court concludes that the arbitration agreement encompasses the claims . . . [it] has no discretion but to compel arbitration and

---

4. The court recognized only a limited exception to this general rule, holding that mandamus review would be appropriate only if a party "can meet a 'particularly heavy' mandamus burden to show 'clearly and indisputably' that the district court did not have the discre-

tion to stay the proceedings pending arbitration." *Palacios*, 2006 WL 1791683, at *1–2 (quoting *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 310–11 (5th Cir. 2003)).

stay its own proceedings." *FirstMerit*, 52 S.W.3d at 753–54.

The trial court abused its discretion by refusing to send the claims for personal injury to arbitration, because there was no legal basis for excluding those claims from arbitration. The trial court may have believed that this case was subject to the Texas Arbitration Act ("TAA"), which provides that "a claim for personal injury" need not be arbitrated except when certain procedural requisites have been met. *See* TEX. CIV. PRAC. & REM.CODE §§ 171.002(a)(3) & (b).[5]

■■■■■ Any reliance on the TAA in this case is unwarranted. Here, the parties expressly agreed to be bound by the FAA, disavowing any state act that threatened the written terms of the parties' agreement. *See* Jim Walter Homes Exhibit "D" (agreeing that disputes shall be submitted to arbitration "pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (or any applicable state Arbitration Act, if the state Arbitration Act will in fact enforce the provisions hereof)"). Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (applying FAA where agreement expressly invoked it); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex.App.-San Antonio 2000, orig. proceeding) (same).

This case additionally involves interstate commerce. Jim Walter Homes is a Flori-da corporation and the parties expressly acknowledged that the contract required interstate activity and affected interstate commerce. *See FirstMerit*, 52 S.W.3d at 754 (interstate commerce was involved where parties were from different states, and parties had also expressly agreed that interstate commerce was involved). Because this case involves interstate commerce, the FAA would preempt the TAA's more restrictive provisions in the event of a conflict. *See D. Wilson*, 196 S.W.3d at 780.[6] The TAA's provision exempting personal injury claims from arbitration accordingly does not apply in this case.

The trial court abused its discretion by refusing to send personal injury claims to arbitration. All of the claims that plaintiffs have asserted are arbitrable under the broad arbitration clause that plaintiffs entered when they contracted with Jim Walter Homes to build a home.

## C. An evidentiary hearing was not necessary.

■■■■■ Plaintiffs argue that arbitration cannot be ordered in the absence of an evidentiary hearing. This is not the law. A court is not required to conduct an evidentiary hearing before compelling arbitration in every case. Rather, a trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. *See Tipps*, 842 S.W.2d at 269. This court has explained the procedure that courts should follow when faced with a motion to compel arbitration, as "essentially a motion

---

**5.** Plaintiffs argued below that the personal injury claims could not be arbitrated under Texas law.

**6.** "The FAA preempts the TAA if: (1) the agreement is in writing, (2) it involves inter-state commerce, (3) it can withstand scrutiny under traditional contract defenses [under state law], and (4) state law affects the enforceability of the agreement." *D. Wilson*, 196 S.W.3d at 780.

for summary judgment, subject to the same evidentiary standards." *In re Jebbia,* 26 S.W.3d 753, 756–57 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). The party alleging an arbitration agreement must present "complete summary proof of his 'case-in-chief'" that an agreement to arbitrate requires arbitration of the dispute. *Id.* Once this is accomplished, the party resisting arbitration may raise an issue of material fact about his opponent's proof or present some evidence supporting every element of a defensive claim that there is no enforceable agreement to arbitrate. *Id.* Only if a material issue of fact is raised is an evidentiary hearing necessary. *See id.; Tipps,* 842 S.W.2d at 269.

▪ Jim Walter Homes properly moved to compel arbitration in this case. Jim Walter Homes supported its motion by affidavit and attached an authenticated copy of the agreement containing the arbitration clause, which had been executed by both Jim Walter Homes and plaintiffs. Jim Walter Homes further established by affidavit that the transaction involved interstate commerce and was accordingly governed by the FAA. Jim Walter Homes also showed that plaintiffs' factual allegations and claims fell within the scope of the broad agreement to arbitrate. Jim Walter Homes has included these materials in the record supporting its petition for mandamus and has met its burden of presenting evidence of an arbitration agreement that governs the dispute between the parties.

**1. The limited warranty does not negate the arbitration clause.**

In response, plaintiffs have failed to raise a fact issue or a valid defense. Plaintiffs contend the limited warranty renders the contract ambiguous and requires an evidentiary hearing. The limited warranty is standard and excludes liability for "bodily injury" or damage to real or personal property other than the home itself. The warranty further provides that it "supersedes and controls all other contract documents, discussions and representations." Plaintiffs rely on this language to argue that they have no obligation to arbitrate.[7]

▪ The construction of a contract to determine whether it is ambiguous is a question of law. *See D. Wilson,* 196 S.W.3d at 781. A contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction. *Id.* When interpreting a contract, we must ascertain and give effect to the intent of the parties as that intent is expressed in the contract. *Gulf Ins. Co. v. Burns Motors, Inc.* 22 S.W.3d 417, 423 (Tex.2000). We must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* No. 04–0662, 2006 WL 1651684, at *2, 207 S.W.3d 342, 345 (Tex. Jun.16, 2006) (citations omitted). If the contract can be given a definite or certain legal meaning, it is unambiguous

7. The precise interpretation of the contract that plaintiffs urge is not clear. At times, they seem to contend that their claims are covered only by the limited warranty, and not by the contract at large, perhaps reasoning that they have no obligation to arbitrate because there is no arbitration clause in the limited warranty. Other times, however, plaintiffs seem to argue that the limited warranty "overrides" the arbitration clause, perhaps by excluding all claims for bodily injury from the contract. As explained above, neither argument is reasonable because the arbitration clause and the limited warranty do not conflict.

and we construe it as a matter of law. *Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex.2005).

In this case, a review of the limited warranty's language shows that the warranty does not create an ambiguity about the obligation to arbitrate. The limited warranty simply states that bodily injury and other damages are excluded from warranty coverage. The warranty provides that the warranty does not cover "[b]odily injury, damages to personal property, damage to real property which is not part of the home you are purchasing and any other incidental or consequential damages." The intent of this language is to limit Jim Walter Homes's warranty liability to actual damages arising from the home itself. The warranty provision does not purport to do anything else, and no part of the warranty provision conflicts with the obligation to arbitrate, which itself applies to "any controversy ... arising out of or relating to this Agreement...." The fact that the warranty provides that it "supersedes and controls all other contract documents" does not change this analysis. This language provides that the warranty controls only "with respect to all matters addressed herein," i.e., the terms of the warranty itself.

The language of the limited warranty and the arbitration clause do not conflict. They are not susceptible to more than one reasonable interpretation and accordingly are not ambiguous. *See D. Wilson*, 196 S.W.3d at 782 (reconciling arbitration clause with other contractual language as a matter of law). Because there is only one reasonable interpretation of the contract, the trial court properly construed it as a matter of law. *See Frost Nat. Bank*, 165 S.W.3d at 313. No evidentiary hearing was necessary.

## 2. Jim Walter Homes did not waive its right to arbitrate.

Plaintiffs also contend that the trial court erred by refusing to provide an evidentiary hearing concerning their claim that Jim Walter Homes has waived its right to arbitrate. Waiver occurs only where "a party has acted inconsistently with its right to arbitrate and such actions prejudiced the other party." *In re Oakwood Homes*, 987 S.W.2d 571, 574 (Tex. 1999). There is a strong presumption against waiver under the FAA. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (per curiam). "Merely taking part in litigation is not enough unless a party 'has substantially invoked the judicial process to its opponent's detriment.'" *Id.* (quoting *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002)).

In the district court, plaintiffs claimed that Jim Walter Homes waived its right to arbitrate by failing to respond to letters requesting arbitration that plaintiffs sent to Jim Walter Homes during the building process. The Texas Supreme Court has expressly held that a party's failure to respond to correspondence requesting arbitration does not establish waiver. *Oakwood*, 987 S.W.2d at 574 (rejecting claim that failure to respond to letters requesting arbitration established waiver). Plaintiffs' waiver argument accordingly failed to raise a fact issue on waiver that required an evidentiary hearing.

Plaintiffs additionally claim that Jim Walter Homes has waived its right to arbitrate for the following reasons: it delayed in filing the petition for mandamus; it refused to pay its portion of the arbitration fee; and it filed a motion to dismiss the arbitration that plaintiffs had filed pursuant to the court's order. A review of

plaintiffs' supplemental record does not establish that Jim Walter Homes has resisted arbitration, or any grounds upon which it may have resisted. It is possible, for example, that Jim Walter Homes was resisting arbitration only until all of the claims against it were referred to arbitration, or until this court could hear its petition for mandamus. In light of the fact that Jim Walter Homes moved to compel arbitration and currently petitions for mandamus to protect its arbitration rights, none of the actions of which plaintiffs complain are inconsistent with Jim Walter Homes's right to arbitrate. Whatever Jim Walter Homes's reasons for resisting the arbitration that plaintiffs initiated, plaintiffs have not established that it acted in a manner inconsistent with its right to arbitrate. *See, e.g., Vesta,* 192 S.W.3d at 763 (holding that even litigating a case in the trial court for two years failed to demonstrate sufficient prejudice to overcome the strong presumption against waiver).

**D. Review is not barred by unclean hands or laches.**

Plaintiffs also contend that mandamus should not issue because Jim Walter Homes allegedly has "unclean hands." Although mandamus is a legal remedy, it is governed by equitable principles, so "the doctrine of unclean hands has been used to deny issuance of the writ." *See Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 552 (Tex.1990) (noting use of doctrine but refusing to apply it). Whether to apply the doctrine or not is committed to a court's discretion. *Thomas v. McNair,* 882 S.W.2d 870, 880–81 (Tex.App.-Corpus Christi 1994, no writ). The doctrine will be applied only to "one whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or

one who has violated the principles of equity and righteous dealing." *Id.* In addition, the complaining party must show an injury to himself arising from the conduct. *Id.* "The clean hands maxim should not be applied when the defendants have not been seriously harmed and the wrong complained of can be corrected without applying the doctrine." *Id.*

It is unclear precisely what conduct plaintiffs claim constitutes "unclean hands." Plaintiffs make several conclusory statements about "gamesmanship," but include few specific factual complaints. Plaintiffs specifically claim only that Jim Walter Homes failed to apprise this court of an earlier hearing on the motion to compel where no record was made; Jim Walter Homes objected to and refused to present subpoenaed witnesses at the hearing; Jim Walter Homes complained to plaintiffs' attorney about the alleged suspension of his law license, when in fact his license had not been suspended; and plaintiffs' counsel did not receive notice of the filing of the draft order on the motion to compel or some objections Jim Walter Homes filed to a request for an *in camera* inspection of unspecified documents.

Plaintiffs have not made a credible case for invoking the doctrine of unclean hands. They do not complain of behavior that is obviously unjust or that demonstrates a lack of good faith. Some of the conduct about which they complain-for example, the refusal to put on witnesses at the hearing-was not inappropriate and cannot form the basis of a complaint about unclean hands. *See, e.g., Knight v. Volkart,* No. 13–01–00858–CV, 2002 WL 31623580, at *8 (Tex.App.-Corpus Christi Nov.21, 2002, no writ) (holding that conduct that was based on a correct legal position did not constitute unclean hands). Other alleged conduct, such as the allega-

tion about plaintiffs' counsel's law license, does not relate directly to the subject of this mandamus proceeding and accordingly is not relevant. *See Axelson,* 798 S.W.2d at 552. Plaintiffs have also failed to make any showing that they were seriously harmed.[8] They are complaining about the ordinary activities and possible misunderstandings of litigation, and without more, there is no basis for invoking the unclean hands doctrine.

Plaintiffs further contend that Jim Walter Homes did not timely file its petition for mandamus. Here, the trial court heard the motion to compel on May 26, 2006, and issued a formal ruling on the motion on June 16, 2006. Jim Walter Homes filed its petition for mandamus seven weeks later, on August 4, 2006. Plaintiffs have no authority for the proposition that Jim Walter Homes's petition is untimely. *See Rivercenter Assoc. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993) (denying review on basis of four month delay in filing mandamus without reason); *In re Xeller,* 6 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) (denying review on basis of delay where sixteen months passed between the ruling about which relator's complained and filing of petition). In addition, although it is unclear whether a showing of prejudice is necessary to complain of timeliness, plaintiffs have not established any prejudice arising from the short delay in filing.[9]

### III. Conclusion

For the foregoing reasons, we conditionally grant Jim Walter Homes's petition for

mandamus[10] and dismiss plaintiffs' petition for mandamus for lack of jurisdiction.

---

8. Plaintiffs' argument that their appellate deadline lapsed is legally incorrect. Because the court's order was not a final judgment, appellate deadlines did not run. *See Tipps,* 842 S.W.2d at 269. Plaintiffs have accordingly suffered no prejudice from failing to meet non-existent deadlines.

9. Contrary to plaintiffs' claim, the petition for mandamus was filed prior to the expiration of the 60 day deadline that the trial court imposed on them to commence arbitration.

10. The mandamus will issue only if the trial court fails to modify its order to comport with this opinion.