**CITIGROUP GLOBAL MARKETS, INC. and William E. Selzer, Appellants**

v.

**Beth BROWN and Cheryl Kaplan, Administrators of The Estate of David S. Mandell, Deceased, Appellees.**

**In re Citigroup Global Markets, Inc. and William E. Selzer, Relators.**

Nos. 14–07–00450–CV, 14–07–00718–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 5, 2008.

Mark Ryan Trachtenberg, Houston, TX, for appellants.

Sandford L. Dow, Houston, TX, for appellees.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## OPINION

### KEM THOMPSON FROST, Justice.

This mandamus proceeding and interlocutory appeal arise out of a dispute between the administrators of an estate and a brokerage firm. The estate administrators, who are the deceased's daughters, sued the brokerage firm and one of its consultants asserting various tort claims regarding an account that the deceased's son had established in his father's name using a power of attorney. The brokerage firm defendants moved to compel arbitration based on arbitration provisions in the father's brokerage agreement. They carried their initial burden of establishing the existence of an arbitration agreement and showing that the administrators' claims fall within the scope of the agreement. However, the administrators asserted that the father lacked mental capacity when he executed the power of attorney used by his son to open the brokerage account and that therefore, his son lacked authority to bind the father to the arbitration provision of the brokerage agreement. For reasons explained below, we conclude the administrators failed to carry their burden of presenting evidence in support of this assertion; therefore, we conditionally grant the requested mandamus relief and dismiss the interlocutory appeal as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees/real parties in interest Beth Brown and Cheryl Kaplan (hereinafter the "Administrators") sued their brother Marc Mandell claiming that after their father, David Mandell, suffered a massive stroke, Marc had him sign a power of attorney in the hospital while David lacked the mental capacity necessary to enter into a contract. The Administrators alleged that Marc, using the power of attorney, then converted their father's assets and wasted these assets by speculative investments made through appellant Citigroup Global Markets, Inc. (hereinafter "Citigroup"). The Administrators asserted claims against their brother for breach of fiduciary duty, negligence, conversion, and waste. They also sought an accounting and a declaratory judgment that the power of attorney he held for their father was void ab initio because their father lacked the requisite mental capacity necessary to enter into a contract when he signed the power of attorney. At first, the Administrators sued only Marc. Later, they added as defendants Citigroup and William E. Selzer, a financial consultant at Citigroup who allegedly supervised the investments in question (hereinafter collectively the "Citigroup Parties"). The Administrators asserted claims against the Citigroup Parties for breach of fiduciary duty and negligence based on various alleged acts and omissions relating to Marc's investment of David's funds using the power of attorney.

In February 2004, the Citigroup Parties moved to compel arbitration of the claims asserted against them based on a broad arbitration provision in David's client agreement with Citigroup (hereinafter "Arbitration Provision"). The agreement was not signed by David but rather was signed by Marc as David's agent based on the power of attorney. The Administrators' claims against the Citigroup Parties fall within the scope of the Arbitration Provision, and the Administrators have never argued otherwise. However, the Administrators opposed the motion to compel, asserting as a defense that David lacked the requisite mental capacity necessary to enter into a contract when he

signed the power of attorney. In support of this defense, the Administrators argued that (1) Marc signed the client agreement as David's agent based solely on a power of attorney dated September 6, 1996; (2) when David signed this power of attorney he lacked the requisite mental capacity necessary to enter into a contract; (3) Marc lacked the authority to bind his father to the client agreement; (4) if David lacked capacity, as alleged by the Administrators, the arbitration provision would not be binding on David or the Administrators; and (5) before deciding whether to compel arbitration, the trial court should decide whether David had the mental capacity necessary to execute the power of attorney (hereinafter "the Capacity Issue"). The Administrators did not attach any evidence to their first response, but they requested a continuance to conduct discovery on these issues.

In September 2004, the trial court held a hearing on the motion to compel arbitration. The trial court stated that (1) the court, rather than the arbitration panel, would decide whether the power of attorney was valid and whether Marc bound David to the arbitration provision in the client agreement; and (2) the proper way to proceed was to sever the claims against the Citigroup Parties from the rest of the case and then proceed with a trial on the declaratory-judgment issue as to whether David was incapacitated when he signed the power of attorney. The trial court suggested that the parties file an agreed motion to sever. The Administrators' counsel indicated that he would agree to a severance, but counsel for the Citigroup Parties did not agree to a severance. The parties did not file an agreed motion for severance as the trial court suggested; rather, in November 2004, the Citigroup Parties filed a motion stating that, at the September 2004, hearing, the trial court had granted their motion to compel arbi-

tration and had ordered the claims against them severed into a separate case. The Citigroup Parties asserted that the trial court also had ruled that all proceedings in the severed case should be stayed and that after resolution of the Capacity Issue in the non-severed case, the claims in the severed case would be submitted to arbitration. The Citigroup Parties requested an order memorializing these rulings. The Citigroup Parties did not assert or agree that the arbitrability of the Administrators' claims against them would be dependent on how the trial court ruled on the Capacity Issue.

In its December 2004 order, the trial court

● granted the Citigroup Parties' motion to compel arbitration,

● severed all of the Administrators' claims and allegations against the Citigroup Parties into a separate case (hereinafter "Severed Case"),

● stayed the entire Severed Case pending arbitration, and

● ordered that the arbitration of the claims against the Citigroup Parties would not begin until after the Administrators' claims against Marc in the non-severed case had been finally adjudicated.

The Administrators filed a motion for reconsideration in which they stated that the trial court, on its own motion, had severed their claims against the Citigroup Parties. The Administrators objected to the part of the trial court's order in which the trial court granted the motion to compel arbitration. They also objected insofar as the court did not make its order compelling arbitration contingent on a determination that David had sufficient mental capacity to execute the power of attorney. The Administrators did not ask the trial court to undo its severance. The Adminis-

trators complained that the trial court prematurely had compelled arbitration before they were able to obtain a ruling from the trial court on their arbitration defense regarding the Capacity Issue. The Citigroup Parties opposed the motion for reconsideration, asserting that the trial court's order correctly reflected its rulings at the September 2004 hearing and that the trial court correctly had determined that the claims against the Citigroup Parties had to be arbitrated under the Arbitration Provision.

After holding a hearing on the motion for reconsideration, in a May 2005 order, the trial court

- granted in part the Administrators' motion for reconsideration,
- vacated the trial court's December 2004 order,
- ordered that the Administrators' claims against Marc in the non-severed case initially would proceed to trial only on the Capacity Issue,
- ordered that the claims against the Citigroup Parties would remain in the Severed Case,
- transferred additional documents from the file in the non-severed case to the file in the Severed Case,
- stayed the Severed Case pending the final determination of the Capacity Issue,
- took the motion to compel arbitration under advisement, rather than granting it, and
- stated that the Citigroup Parties would have the right to reurge their motion to compel arbitration after the Capacity Issue had been finally determined.[1]

The Administrators' request for declaratory relief regarding the Capacity Issue was set to be tried in the non-severed case in December 2005. Shortly before this trial setting, the Administrators settled all of their claims against Marc, except their action for declaratory relief. The trial court proceeded to trial solely on the claim for declaratory relief in the non-severed case. Only the Administrators' counsel participated in the presentation of evidence and questioning of witnesses. In June 2006, the trial court rendered a final judgment in the non-severed case in which it made various findings of fact and rendered a declaratory judgment that, when David signed the power of attorney, he lacked the mental capacity necessary to enter into a contract.

In September 2006, the Citigroup Parties filed a supplemental motion to compel arbitration, arguing that the claims against them fall within the scope of the Arbitration Provision and that David's estate was bound by this provision because Marc executed the client agreement as David's agent under the power of attorney. The Citigroup Parties denied that Marc lacked sufficient mental capacity to execute the power of attorney when he signed it. The Citigroup Parties asserted that, in any event, it was for the arbitration panel, rather than the trial court, to decide the Administrators' defense regarding the Capacity Issue. In the alternative, the Citigroup Parties asserted that, even if Marc's signature did not bind David to the client agreement, the Administrators still were estopped from avoiding arbitration of their claims. The Citigroup Parties reurged their original motion to compel, as supplemented, and requested the trial court to

---

1. Counsel for the Citigroup Parties agreed to the form of the order but did not agree to its substance.

compel the arbitration of all the Administrators' claims against them.

The Administrators opposed arbitration and argued that the trial court, rather than the arbitration panel, should decide the Capacity Issue. The Administrators did not present any evidence; instead, they asserted that the trial court already had resolved the Capacity Issue in their favor through its final judgment in the non-severed case. The Administrators asserted that, based on this prior determination of the Capacity Issue, the trial court should deny the motions to compel. After a hearing during which no evidence was presented, the trial court signed an order denying both the original and supplemental motions to compel arbitration.

The Citigroup Parties have appealed the trial court's order denying arbitration under section 171.098(a)(1) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(1) (Vernon 2005). Additionally, the Citigroup Parties have filed a petition for writ of mandamus. This court has consolidated these two proceedings.

## II. Standard of Review

■■■■ The Federal Arbitration Act ("Federal Act") applies to an arbitration agreement in any contract involving interstate commerce, to the full extent of the Commerce Clause of the United States Constitution. *See* 9 U.S.C. § 2 (1999); *Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 277–81, 115 S.Ct. 834, 839–41, 130 L.Ed.2d 753 (1995); *In re L & L Kempwood Assocs.*, 9 S.W.3d 125, 127 (Tex.2006). The Administrators do not dispute that the Federal Act applies. The client agreement involves the trading of securities and interstate commerce, and therefore, the Federal Act applies. *See American Med. Techs. v. Miller*, 149 S.W.3d 265, 269 (Tex.App.-Houston [14th

Dist.] 2004, orig. proceeding) (consolidated appeal and mandamus proceeding). Mandamus relief is available when the trial court clearly abuses its discretion by erroneously denying a party its contracted-for arbitration rights under the Federal Act. *See In re D. Wilson Const. Co.*, 196 S.W.3d 774, 780–81 (Tex.2006) (orig.proceeding); *In re Aspen Tech., Inc.*, 253 S.W.3d 857, 861 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). Therefore, the Citigroup Parties' right to mandamus relief hinges on whether the trial court erred by refusing to compel arbitration under the Arbitration Provision. On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court reasonably could have reached only one decision, and not the decision the trial court made. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Mandamus review of issues of law is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005).

## III. Issues and Analysis

In the trial court and on appeal, the Citigroup Parties have argued that, because the Capacity Issue, if decided in the Administrators' favor, would vitiate the entire client agreement rather than the Arbitration Provision alone, this issue must be resolved by the arbitration panel rather than the trial court. The Administrators have argued, and the trial court agreed, that the trial court must decide the Capacity Issue before it can compel arbitration. For the purposes of our analysis we presume, without deciding, that the trial court, rather than the arbitration panel, must decide the Capacity Issue.

Did the trial court err by concluding that the deceased's son lacked authority to execute the client agreement on his father's behalf because his father lacked the mental capacity necessary to enter into a contract when his father signed the power of attorney?

■ The Citigroup Parties argue that this court should grant mandamus relief because the trial court abused its discretion in denying their motions to compel arbitration based on the declaratory judgment in the non-severed case. Under both the Texas Arbitration Act (hereinafter "Texas Act") and the Federal Act, a party seeking to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the claims asserted fall within the agreement's scope.[2] *See* 9 U.S.C. § 4 (1999); Tex. Civ. Prac. & Rem.Code Ann. § 171.021 (Vernon 2005); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001); *In re Jim Walter Homes, Inc.,* 207 S.W.3d 888, 896–97 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding); *Wachovia Securities, LLC v. Emery,* 186 S.W.3d 107, 113 (Tex. App.-Houston [1st Dist.] 2005, orig. proceeding) (consolidated appeal and mandamus proceeding). The Citigroup Parties attached to their motion to compel an affidavit proving up the client agreement in question and stating that Marc entered into this agreement on behalf of David using the power of attorney.[3] The client agreement reflects that David was the account holder and that Marc signed the agreement on David's behalf using a power of attorney. This client agreement contains the Arbitration Provision, which is an agreement to arbitrate covered by the Federal Act.

■ Under the unambiguous language of the Arbitration Provision, the Administrators' claims fall squarely within the scope of this provision, and the Administrators have not argued otherwise. Because the Citigroup Parties carried their initial burden of establishing the existence of an arbitration agreement and showing that the Administrators' claims against them fall within the agreement's scope, the burden then shifted to the Administrators, as the parties resisting arbitration, to present evidence on their defense based on the Capacity Issue. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 753–54 (stating that, once party seeking to compel arbitration shows existence of arbitration agreement covering the claims in question, the party opposing arbitration must prove a defense to avoid arbitration); *In re Jim Walter Homes, Inc.,* 207 S.W.3d at 896–98 (stating that, once party moving to compel arbitration submitted affidavit proving up executed contract containing arbitration clause covering the claims in question, the party opposing arbitration, to avoid arbitration, must respond with evidence controverting the movant's evidence or proving a defense to arbitration); *Wachovia Securities, LLC,* 186 S.W.3d at 113 (stating that, if a party seeking arbitration carries its initial burden of establishing the existence of an arbitration agreement covering the claims in question, then burden shifts to party resisting arbitration to present evidence proving a defense to arbitration); *see also T & R Enters., Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1278 (5th Cir.

---

2. As stated above, the arbitration agreement in this case is subject to the Federal Act. Nonetheless, we still apply Texas law to resolve procedural issues. *See Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984); *Jack B. Anglin, Inc. v. Tipps,* 842 S.W.2d 266, 268 (Tex.1992).

3. In their briefing in this court, the Administrators state that Marc clearly signed the client agreement as David's purported agent based on Marc's purported authority under the power of attorney.

1980) (concluding that a party must unequivocally deny that the agreement was made and must produce evidence to substantiate the denial in order to raise an issue regarding formation of the arbitration agreement under section 4 of the Federal Act).

 The Administrators, however, submitted no evidence whatsoever in opposition to the Citigroup Parties' motions to compel arbitration.[4] Though the Administrators pleaded that Marc lacked authority to execute the client agreement on David's behalf because David allegedly lacked the mental capacity necessary to enter into a contract when he signed the power of attorney, the Administrators presented no evidence in support of this allegation to the trial court in the proceedings regarding the Citigroup Parties' motions to compel. In their response to the motions to compel arbitration, the Administrators relied on the trial court's final declaratory judgment in the non-severed case. Nonetheless, the Administrators did not attach a copy of this judgment to their response, nor did they ask the trial court to take judicial notice of this judgment or otherwise undertake to discharge their burden to present evidence of their defense based on the Capacity Issue. In any event, even if the Administrators had proffered this judgment, it would not have been material to the issue at hand because that judgment did not resolve the Capacity Issue as to

any persons who were not parties in the non-severed case. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a) (Vernon 2005) (stating that a trial court's declaratory judgment does not prejudice the rights of persons who are not parties); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162–63 (Tex.2004) (stating that failure to join all interested parties in declaratory-judgment action does not deprive the trial court of jurisdiction to grant declaratory relief but that, under section 37.006, the declaratory judgment does not bind nonparties). Though the Administrators acknowledge the Citigroup Parties were not parties to the non-severed case, they nonetheless argue that the Citigroup Parties are bound by the trial court's declaratory judgment because the Citigroup Parties did not intervene in the non-severed case.

In declaratory-judgment actions, the party seeking declaratory relief must join in the action all parties that it seeks to bind by the declaratory judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a); *Brooks*, 141 S.W.3d at 162–63. The Administrators agreed to the trial court's severance of the claims against the Citigroup Parties out of the declaratory-judgment action and into a separate case and chose not to join the Citigroup Parties as parties for the trial and judgment in that action. Consequently, the declaratory judgment is not binding on the Citigroup Parties.[5] *See* TEX. CIV. PRAC. & REM.CODE

---

4. At oral argument, counsel for the Administrators suggested that they satisfied this burden of production by submitting evidence in the non-severed case in opposition to Marc's motion for summary judgment. Because this evidence was not filed in the Severed Case and because it was not filed in response to the Citigroup Parties' motions to compel, the Administrators cannot rely on this evidence to discharge their burden of presenting evidence regarding the motions to compel arbitration.

5. The Administrators do not analyze section 37.006 of the Texas Civil Practice and Remedies Code, and they cite no authority that supports their assertion that the Citigroup Parties are bound by the declaratory judgment based on their failure to intervene. In addition, the Administrators did not plead or seek to prove that the declaratory judgment binds the Citigroup Parties under the doctrines of claim preclusion or issue preclusion; however, even if they had, they would not have succeeded. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a); *Brooks*, 141 S.W.3d at 162–

ANN. § 37.006(a); *Brooks,* 141 S.W.3d at 162–63.

Based on the uncontroverted evidence, the trial court was presented with an arbitration agreement under the Federal Act that encompasses the Administrators' claims against the Citigroup Parties. However, the Administrators did not produce any evidence supporting their allegations regarding the Capacity issue. Therefore, the trial court erred by impliedly ruling that Marc did not have authority to execute the client agreement on David's behalf because David lacked the mental capacity necessary to enter into a contract when he signed the power of attorney. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 754; *In re Jim Walter Homes, Inc.,* 207 S.W.3d at 896–900; *Wachovia Securities, LLC,* 186 S.W.3d at 113–16. Under the applicable standard of review, we conclude that the Citigroup Parties have shown that the trial court clearly abused its discretion by denying the Citigroup Parties' motions to compel arbitration.[6] Therefore, mandamus relief is warranted.

### IV. CONCLUSION

The Federal Act governs the Arbitration Provision. The Citigroup Parties carried their initial burden of establishing the existence of an arbitration agreement and showing that the Administrators' claims against them fall within the scope of the agreement. Therefore, the burden shifted to the Administrators to present evidence on their defense based on the Capacity Issue. Because the Administrators presented no evidence to discharge this burden, the trial court clearly abused its discretion by impliedly determining that Marc lacked authority to execute the client agreement and by denying the motions to compel arbitration. The Administrators cannot rely on the declaratory judgment in the non-severed case because the Citigroup Parties were not parties to that judgment and are not bound by it. Accordingly, we conditionally grant a writ of mandamus directing the trial court to vacate its May 3, 2007 order denying the Citigroup Parties' motion to compel arbitration and their supplemental motion to compel arbitration and to issue an order compelling arbitration of the Administrators' claims against the Citigroup Parties pursuant to the Arbitration Provision. We are confident the respected trial judge will comply with this opinion. Only in the unlikely event he fails to do so will the writ issue. Because we have granted this mandamus relief, we dismiss the Citigroup Parties' interlocutory appeal as moot.

---

63. The Administrators also assert that, because the Citigroup Parties were not parties in the non-severed case, they lack standing to challenge the declaratory judgment and may not collaterally attack it. However, the Citigroup Parties do not challenge, attack, or seek to set aside this declaratory judgment; rather, they assert that it does not bind them.

6. Because of this disposition, we need not and do not address the Citigroup Parties' alternative argument based on estoppel.