## WESTBROOK v. ADAMS. (No. 12089.)

Court of Civil Appeals of Texas. Fort Worth. April 6, 1929.

Rehearing Denied May 4, 1929.

against the Bankers' Life Insurance Company and Dr. T. H. Westbrook for the recovery of the proceeds of a policy of life insurance on the life of her deceased husband, T. J. Adams, and for a cancellation of an assignment of the policy from her as beneficiary to the estate of the insured, on the grounds that the assignment was procured by fraud and undue influence and on the ground that her husband was of unsound mind at the time of the change in beneficiary and execution of the assignment.

The Bankers' Life Insurance Company admitted liability under the policy and tendered the proceeds thereof into court, and the case resolved itself into a contest between the plaintiff, Mrs. Ida M. Adams, who claimed as the original beneficiary named in the policy, and the defendant Dr. T. H. Westbrook, who claimed that T. J. Adams changed the policy so as to make his estate the beneficiary for the purpose of securing the payment of a substantial doctor's bill for services rendered and money advanced to the deceased by the defendant during the last illness of Adams.

Mrs. Ethel Williford and Jack G. Adams, the daughter and son of T. J. Adams, were made parties defendant, for the reason that they were heirs. They filed an answer disclaiming any interest in the proceeds of the policy and adopted the pleadings of plaintiff.

The case was submitted to a jury on two special issues. In answer to the first, the jury found that the deceased, T. J. Adams, "was of unsound mind" at the time he executed the transfer of the policy and assignment introduced in evidence. The second issue was whether from the evidence the jury believed that, at the time he executed the instruments in question, the deceased "was induced to do so because of undue influence, if any, exercised over him by the said T. H. Westbrook."

In connection with special issue No. 1, the court gave a definition of the term "unsound mind," and, in connection with the second issue, a definition of the term "undue influence." The second issue was unanswered, for the reason that the court instructed the jury that, in event they gave an affirmative answer to the first issue, they need not answer the second.

Upon the verdict so rendered, the court entered its judgment in favor of plaintiff for the recovery of the money deposited in court by the insurance company, less $100 attorneys' fees, that the change of beneficiary and assignment in question should be set aside and canceled, and that the defendants Mrs. Ethel Williford and Jack G. Adams take nothing. It was further ordered that plaintiff and the insurance company recover of the defendant Westbrook all costs. From the judgment, so entered, the defendant Westbrook prosecutes this appeal.

Houtchens & Clark and J. H. Craik, all of Fort Worth, for appellant.

Samuels, Foster, Brown & McGee, and Homer L. Baughman, all of Fort Worth, for appellee.

CONNER, C. J. Mrs. Ida M. Adams filed this suit in the Sixty-Seventh district court

We have before us a voluminous record with fifty-six separate propositions asserting error in the proceedings below upon which the appeal is predicated, and we feel that our disposition of the case must be greatly abbreviated.

We will first dispose of a number of the incidental or minor propositions presented on appeal.

In the first six propositions it is urged that the court erred in overruling the defendant's general demurrer and various exceptions to the plaintiff's petition, in that, as insisted, the allegations were insufficient in particulars pointed out to present actionable fraud on the part of defendant. Plaintiff's petition is quite lengthy, but, in substance, among other things, it alleges that the deceased had been seriously ill for many months; that he was a morphine addict and of unsound mind, incapable of appreciating the effect of what he did, all of which was well known to the defendant; and that the defendant, for the purpose of securing payment for his services as a physician and sums advanced by him, as he alleged, induced the deceased to change the beneficiary named in the policy, who was the plaintiff in the case, to the estate of deceased. We do not feel prepared to rule that the exceptions urged are well taken, but we think we need not determine these questions in view of the fact that the jury found from the evidence, the sufficiency of which is not questioned, that the deceased was of unsound mind and mentally incapaciated to understand the nature and effect of his act in making the change of beneficiary in the policy. Moreover, the issue of fraud as a ground for the change and a setting aside of the assignment was submitted upon a condition only and not answered.

Propositions 6 to 16, inclusive, cover exceptions to various declarations, acts, conditions, etc., of the deceased as detailed by his wife, son, and daughter, tending to show that the deceased was of unsound mind. It, is insisted that such testimony was admitted in violation of article 3716, Rev. Civ. Statutes, and the following cases are urged in support of the propositions stated: Shelton v. Shelton (Tex. Civ. App.) 281 S. W. 331; Griggs v. Griggs (Tex. Civ. App.) 220 S. W. 363; Royal Fraternal Union v. Stahl (Tex. Civ. App.) 126 S. W. 920; Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

Article 3716, Rev. Statutes, reads as follows: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representa-

tives of a decedent arising out of any transaction with such decedent."

The case of Shelton v. Shelton, cited above, was one in which suit was instituted by some of the children and grandchildren of a deceased mother against one of her sons to set aside a transfer of the mother's interest in lands owned by her, on allegations to the effect that, at the time of the transfer by the mother of her interest to the son, she did not have mental capacity to make the deed and had been unduly influenced to do so by the son. The plaintiffs in the suit were claiming as heirs of their mother, and the case comes clearly within the provision of the article quoted. Reference to other cases cited in behalf of appellant likewise appear to be cases in which the claims of some or all of the litigants were heirs of a deceased, and hence within the terms of the statute.

This court, in the case of Dodson v. Watson, 225 S. W. 586, held that the statute under consideration will not be so extended by judicial constructions as to exclude testimony not expressly excluded by its provisions. To the same effect is the case of Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441, by the San Antonio Court of Civil Appeals.

It is to be observed that the plaintiff below was not seeking relief on the ground that she was an heir of the deceased; indeed, no one claiming as an heir is involved. The wife claimed the right of recovery by virtue of a contract with the insurance company, which she alleged had been unlawfully altered.

In Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585, our Supreme Court, in an opinion by Mr. Justice Brown, held that the right of a husband to the proceeds of an insurance policy on the life of the wife, payable to the husband, was his separate property.

In the case of Turner v. Turner (Tex. Civ. App.) 195 S. W. 326, it was held that a change of beneficiary under a benefit insurance certificate, made at a time when the certificate holder was insane and without capacity to contract, was voidable at the instance of the original beneficiary.

In Wootters v. Hale, 83 Tex. 563, 19 S. W. 134, a son was sued for land given him by his father under a parol contract, followed by possession and valuable improvements. It was held that the defendant was a competent witness to prove the transaction. He did not claim the land as heir or legal representative.

In the case of Grand Lodge, F. & A. M. of Texas, v. Dillard (Tex. Civ. App.) 162 S. W. 1173, it was held that a wife claiming as the beneficiary in a benefit certificate issued to her deceased husband was a competent witness to testify to conversations with him in reference to payment of his dues.

See, also, Harris v. Warlick (Tex. Civ. App.) 42 S. W. 356; Field v. Field, 39 Tex.

Civ. App. 1, 87 S. W. 728; Ivy v. Ivy (Tex. Civ. App.) 128 S. W. 682; Mitchell v. Deane (Tex. Com. App.) 10 S.W.(2d) 717.

We conclude that propositions 6 to 16, inclusive, should be overruled.

■ The objection to the statement of defendant Westbrook to the daughter of plaintiff, to the effect that the deceased was "crazy as he could be" was not objectionable, we think, as hearsay testimony. Plaintiff alleged the long-continued illness of deceased, the attendance of Dr. Westbrook as his physician; that the deceased was a drug addict, with a mind incapable of making the assignment in controversy, of all which Dr. Westbrook had knowledge, and his statement to Ethel Williford was clearly admissible as an admission against his interests.

■ This brings us to the vital question in the case. Among other things, the defendant Westbrook alleged that the deceased was in destitute and necessitous condition; that his medical services and certain sums of money alleged to have been advanced to the deceased constituted necessities; that, for a number of years while the deceased lived in the home of his wife, she (Mrs. T. J. Adams) failed to perform the obligations of a wife for a number of years, and that the deceased was seriously ill and urgently in need of medical services and certain sums of money, including two payments of premiums on the policy involved, which the plaintiff failed or refused to supply, and which he (the defendant Westbrook), with the knowledge, consent, and acquiescence of plaintiff, furnished, and which were necessary and of the reasonable value of, to wit, $2,249. Defendant Westbrook further alleged, in substance, that the change of beneficiary in the policy and the assignment which the plaintiff sought to have canceled was with her knowledge and consent made to secure the defendant in payment for the services performed and cash advanced by him. The testimony of defendant tended to support these allegations, but the court refused to submit the issues involved to the jury, and complaint is made of such failure.

By reference to the statement of facts, we find that during the year 1923 Mr. Adams took out a policy of insurance with the Bankers' Life Insurance Company for the sum of $3,000, naming Mrs. T. J. Adams beneficiary; that Mr. Adams died the 1st of April, 1925, at about the age of 49 years. The liability of the insurance company for the payment of the policy in accordance with its terms is not in dispute, and the policy therefore need not be set forth. It was shown, however, that one of its provisions authorized the insured, J. T. Adams, to change the beneficiary named in the policy, and that the following changes were made by the insured: (1) March 4, 1924, from Ida M. Adams, wife, to Jereen Ethel Adams, daughter of insured, with right of revocation; (2) on July 1, 1925, the beneficiary was again changed to Ida M. Adams, wife of insured, with right of revocation; (3) January 4, 1926, from Ida M. Adams to the administrator or executor of the insured, with right of revocation. These changes were made in accordance with the rules of the insurance company and severally accepted by it.

In cases where the policy does not preserve the right in the insured to change the beneficiary therein, it is held that the beneficiary has a vested interest in the proceeds, and that a change cannot be made without the beneficiary's consent. See Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Turner v. Turner (Tex. Civ. App.) 195 S. W. 326. In the last-cited case, it was held that a change of beneficiary under a benefit insurance certificate, made at a time when the certificate holder was insane and without capacity to contract, was voidable at the instance of the original beneficiary.

In Cooley's Briefs on the Law of Insurance, vol. IV, p. 3762, it is said: "As has already been pointed out, if the laws or the contract of a mutual benefit association reserve to the member the right to change his beneficiary, the latter does not take a vested interest. It follows, therefore, that under a reservation of the right to change the beneficiary, in whatever form it exists, the member may, irrespective of the consent of the original beneficiary, and subject only to the rules of the association, change his beneficiary at will."

In 37 Corpus Juris, 581, it is said: "Where the right to change the beneficiary has been reserved in the policy so that the beneficiary does not have a vested right of interest, it is held that insured has complete control and domination of the policy; that his reserved right to change the beneficiary includes the lesser right partially to affect the rights of the beneficiary by assigning or creating a lien on the policy; and that he may do directly what he might do after having changed the beneficiary to himself or his estate."

The quotation above made from Corpus Juris is quoted with approval in the case of Antley v. New York Life Ins. Co., by the Supreme Court of South Carolina, reported in 139 S. C. 23, 137 S. E. 199.

In Splawn v. Chew, 60 Tex. 532, our Supreme Court held, quoting from the headnote: "In ordinary life insurance policies, the beneficiaries named have vested in them irrevocably all interest in the policy. Following Ricker v. Charter Oak Ins. Co., 27 Minn. 193 [6 N. W. 771], and other authorities. When, however, the person procuring the policy enters into some agreement as to what control the insured is to exercise over the policy (a matter permissible in all contracts), no indefeasible interest in such case would be vested in the beneficiaries."

To the same effect is a decision in the case

of Coleman v. Anderson, 98 Tex. 570, 86 S. W. 730.

In McNeil v. Chinn, 45 Tex. Civ. App. 551, 101 S. W. 465, it was held by the Galveston Court of Civil Appeals that the insured, in a policy authorizing a change of beneficiary, was authorized to transfer the same to his creditor as security for debt against the rights of the named beneficiary.

In none of the cases to which we have referred, however, does it appear that the insured, at the time of the change of the beneficiary in the policy and the assignment of its benefits, was insane, and we do not feel prepared to hold, even in cases where the right of change of beneficiary is retained by the insured, that the beneficiary originally named may not appear and contest the validity of the change, on the ground that at the time it was made the insured was without the mental capacity to understand the nature and effect of his act, or that the change was induced by fraud or undue influence, by or in behalf of an interested person. It is true that the contract of the insurance company in such cases is not with the beneficiary, but with the insured. It is to pay at the death of the insured to the beneficiary named and accepted by the insurance company at the time of death. Yet the beneficiary originally named has at least an estate in anticipation sufficient to authorize, it would seem, such beneficiary to raise the question of mental capacity. See Grand Lodge v. Frank, 133 Mich. 232, 94 N. W. 731; Grand Lodge v. McGrath, 133 Mich. 626, 95 N. W. 739. And Mr. Cooley, in his Briefs on Insurance, vol. IV, page 3775 says: "A change of beneficiary, to be given effect, must appear to have been made understandingly, and if it is shown that there was fraud or undue influence, or lack of mental capacity, the attempted change will be regarded as inoperative"—citing Smith v. Harman, 28 Misc. Rep. 681, 59 N. Y. S. 1044; Cason v. Owens, 100 Ga. 142, 28 S. E. 75; Supreme Council of Catholic Benev. Legion v. Murphy, 65 N. J. Eq. 60, 55 A. 497; Ownby v. Supreme Lodge Knights of Honor, 101 Tenn. 16, 46 S. W. 758.

In this case, however, we think elements of equity and of estoppel are presented which, so far as we have been able to observe, does not appear in any of the cases referred to. If it be true, as the defendant Westbrook alleges, in substance, and as his evidence, if credited, tends to show, that the plaintiff, Mrs. Adams, was, during the period of defendant's services and advances, a wife in name only, and failed to furnish services and moneys, including payments of necessary premiums on the policy, and, if defendant with the knowledge and consent of the plaintiff performed such services and made such advances, and if such services performed and advances made by the defendant were necessary under all of the circumstances and so performed and furnished in good faith, in reliance upon the change of beneficiary and assignment made by the insured, it would seem but equitable, at least, that the defendant should receive compensation out of the proceeds of the policy for the reasonable value of the services and advances so made. It is to be observed that the plaintiff's action is an equitable one for cancellation. And the rule that one who seeks equity must do equity is a familiar one, and the mere fact that neither the diligence of counsel nor of this court has disclosed a decided case involving facts the same as here, does not necessarily preclude this court or the trial court from applying equitable principles. As stated, the contract of the insurance company was not an obligation to pay upon the death of the insured the specified sum to the beneficiary originally named. Its obligation was to pay upon the death of the insured to the beneficiary whose name then appeared to have been designated, according to the terms of the policy. The interest, therefore, of the plaintiff, Mrs. J. T. Adams, was not a vested one, but was contingent only.

In the case of Shaw v. First State Bank, 13 S.W.(2d) 133, this court had occasion to refer to and cite equitable principles from the authorities named as follows:

"In 1 Story on Equity (14th Ed.), § 2, it is stated, among other things, that 'natural equity' is spoken of as a branch of English jurisprudence, 'because it depends on and is supported by natural reason.' The same author, in the following section, on the same page refers with apparent approval to Aristotle's definition of the nature of equity as 'the correction of law wherein it is defective by reason of its universality.' The author further cites Domat, Prel. Book, tit. 1, § 1, art. 23, as holding, as a general principle of civil law, that: 'If any case should happen which is not regulated by some express or written law, it should have for a law the natural principles of equity, which is the universal law, extending to everything.'

"And the same author, in section 4, p. 5, adds that: 'The ingenuity of a man in devising new forms of wrong cannot outstrip equity in its development. In all situations and under all circumstances, whether new or old, the principles of equity will point the way to justice where legal remedies are infirm. Precedents will be a constant guide, but never a bar. Where a new condition exists, and legal remedies afforded are inadequate, or none are afforded at all, the never-failing capacity of equity to adapt itself to all situations will be found equal to the case, extending old principles, if necessary, not adopting new ones, for that purpose.'

"The author again says, in volume 2, § 681, in speaking of the nature of equitable liens, that 'a lien is not in strictness either a jus in re or a jus ad rem, but it is simply a right

to possess and retain property until some charge attaching to it is paid or discharged. It generally exists in favor of artisans and others who have bestowed labor and services upon the property in its repair, improvement, and preservation.' "

An application of the principles thus announced is to be found in the case from which we have made the quotation, and many others might doubtless be found of similar import.

■ The appellant, Dr. Westbrook, among other things, testified that in his opinion the deceased, J. T. Adams, was as sound in mind at the time of the change in beneficiary and the execution of the assignment in question as he ever was, and it is to be remembered that, while the jury found and the evidence supports the finding that Dr. Westbrook was mistaken in his opinion as to the sanity of the insured, nevertheless it is well established that the contracts of an insane person are not absolutely void, they are voidable only, and may be affirmed by the lunatic on attaining his sanity, and will be upheld if his contract is for necessaries.

In Williston on Contracts, vol. 1, § 251, it is said: "According to the view more commonly expressed a lunatic's transactions are voidable." And in the succeeding section it is said: "In jurisdictions which require restoration of the consideration received by a lunatic as a condition of his avoidance of his acts as against an immediate purchaser in good faith 'it is clear that subsequent grantees who take the title in like good faith and ignorance of the incompetent's disability are entitled to be restored to their original position before they can be deprived of their property by the intervention of a court of equity."

In section 255 of the same work it is said: "For the same reason as in the case of infants, lunatics are liable for necessaries furnished them. As pointed out under the heading of infancy, this liability should be regarded as quasi-contractual rather than contractual. Hence it is not necessary for the existence of the liability that any express contract be made, as is shown by the fact, that even though a lunatic is under guardianship and, consequently, totally incapable of contracting, he can, nevertheless, bind himself for necessaries if not furnished with them by his guardian. As in the case of infants also a lunatic's liability is measured not by the promises he may have made but by the value of the necessaries furnished him. As to what constitutes necessaries, the same principles that have been discussed previously in case of infants are applicable. In the case of a lunatic, medical services, including nursing and other protection usual for insane persons, may be necessary. Legal services of an attorney to obtain release from an asylum have also been held necessary if faithfully and prudently rendered, regardless of whether they proved beneficial. Necessaries furnished to the wife of the lunatic are also a necessary expense to him for which he may be held liable. The lender of money to a lunatic who uses it in the purchase of necessaries is dealt with in the same way as a similar lender of money to an infant; and, therefore, he is subrogated in equity to the rights of one from whom the necessaries were purchased."

■ We will not stop to collate the Texas decisions relating to the subject, but feel that we can say with confidence that in this jurisdiction a minor or a lunatic, or those claiming in the minor's or lunatic's right, will not be permitted, under the general rule, to cancel or set aside the minor or lunatic's conveyance to a purchaser in good faith and without notice of his disability, without restoration of the value of the thing received by the minor or lunatic as a consideration for the conveyance.

On the whole, we conclude that the essential facts of appellant's plea in avoidance of the insured's unsoundness of mind was not demurrable, and that the court erred in refusing to submit, with appropriate instructions, the material issues so presented.

It is accordingly ordered that the judgment below be reversed, and the cause be remanded for further proceedings not inconsistent with this opinion.

BUCK, J., not sitting.