

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00107-CV

_____

CLINTON KEITH DAWSON AND BRANDY LAKE, Appellants

V.

WILL MATTHEW LOWREY, Appellee

On Appeal from the County Court at Law No. 1
Hunt County, Texas
Trial Court No. CC1200401

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Dissenting Opinion by Justice Carter

## O P I N I O N

This suit regards a dispute between Pat Lowrey's natural children and his former step-children (children of a woman from whom Pat was divorced several years before his August 31, 2012 death after a long bout with cancer)[1] over the proceeds of a bank account.

Clinton Keith Dawson and Brandy Lake, Pat's former step-children, brought suit against Will Lowrey (Pat's son, who also was his attorney-in-fact) with the proceeds of a bank account the object of the suit. The son, Lowrey, filed successive motions for summary judgment which were granted, and the trial court entered a final summary judgment against Dawson and Lake. In six points of error, Dawson and Lake challenge the trial court's summary judgment. We affirm the judgment of the trial court.

## I.    Background

The moneys in controversy were initially held in a bank account maintained in a bank in Wolfe City, Texas, since 1996.[2] As it was first opened, the account was solely in Pat's name with Lowrey as the account beneficiary. In 2009, Pat changed the ownership of the account from a single-party account to a multi-party account with Lowrey, this being a survivorship account with Lowrey being both a joint owner and an authorized signatory. By a general durable power

---

[1]Because the claims of Brandy Lake and Clinton Keith Dawson are identical, Lake and Dawson will be referred to collectively as "Dawson" for ease of reading. Pat was divorced from Dawson's mother, Cynthia Jane Lowrey, on June 4, 2003.

[2]Alaine Jill Stepanovich, Pat's daughter, was initially a party to the lawsuit. The claims against Stepanovich were nonsuited without prejudice prior to the filing of this appeal.

of attorney signed and sworn to by Pat in June 2012, Pat appointed Lowrey as his attorney-in-fact.[3]

Two days before Pat died, Lake brought the necessary papers to Pat at his home to open a new bank account, which was a single-party, payable-on-death (P.O.D.), savings account in Pat's name designating Lowrey, Stepanovich, Dawson, and Lake as beneficiaries on his demise. The initial deposit to this account of $68,042.92 was transferred from Pat's checking account with Lowrey. On that same day, Pat withdrew $2,000.00 from the new account, leaving a balance of $66,042.92. Lowrey was informed of this action, and the following day he, acting under the authority of the power of attorney given him by Pat, withdrew all funds from the savings account and closed it.[4] When Dawson realized that none of the funds remained in the account of which

---

[3]The general durable power of attorney authorized Lowrey "to do and perform all acts and exercise all powers and general authority with respect to all of the following designated transactions and matters as fully described in the State of Texas Powers of Attorney Act, applying to all powers of attorney created and specified therein . . . ." The power of attorney specifically included banking transactions.

Durable powers of attorney were authorized pursuant to Sections 481 through 506 of the Texas Probate Code, which was in force and effect during these transactions and through the date of trial. TEX. PROB. CODE ANN. §§ 481–506 (West 2003).

Beginning in 2009 and finally concluding effective January 1, 2014, the Texas Legislature, as part of its topic-by-topic statutory revision program, repealed the Texas Probate Code and re-codified its provisions in the Texas Estates Code. The new codification is "without substantive change," and its purpose is to make the law "more accessible and understandable." See TEX. ESTATES CODE ANN. § 21.001 (West 2014). Because the governing law at the time of the occurrences mentioned here and at the time of trial was prior to the repeal and recodification of the Texas Probate Code, we cite the provisions of the Texas Probate Code and include at the conclusion of this opinion, a Table of Citations which provides the session law citations for the repealed Probate Code sections as well as a cross-reference to the re-codified Estates Code citations.

[4]The bank's records indicate that Lowrey wire transferred $12,000.00 of the account funds to a Chase Bank account in his name in McKinney. Additionally, Lowrey withdrew $37,731.21 from the account on August 30, 2012, with which he purchased five cashier's checks as follows: (1) a $10,000.00 check payable to Lake, (2) an $11,731.21 check payable to Dawson, (3) a $12,000.00 check payable to Stepanovich, and (4) two $2,000.00 checks payable to Stepanovich. The remaining account balance of $16,267.04 was then transferred back to the original checking account from which it was transferred by Pat on the previous day, bearing account number 503051424. Lowrey never gave Dawson and Lake their checks. Instead, he deposited the $11,731.00 and $10,000.00 checks into the original checking account, numbered 503051424. On August 31, 2012, Lowrey appears to have withdrawn (in the

he was among the P.O.D. beneficiaries, he brought suit against Lowrey. In three different summary judgment orders, the trial court ruled against Dawson on each of his claims.[5]

In his first amended original petition,[6] Dawson alleged causes of action against Lowrey for (1) breach of the fiduciary duty Lowrey owed to Pat created by the June 1, 2012 power of attorney by wrongfully withdrawing funds from the P.O.D. account, (2) breach of the fiduciary duty Lowrey owed to Dawson as a result of the equitable trust relationship created in the P.O.D. account, (3) tortious interference with Dawson's inheritance rights by preventing Dawson from receiving his share of the P.O.D. account proceeds after Pat's death, (4) conversion of the funds in the P.O.D. account, and (5) theft of Dawson's share of the P.O.D. account funds in violation of the Texas Theft Liability Act. Dawson sought to impose a constructive trust on the funds he claims were wrongfully taken by Lowrey from the P.O.D. account; he further asked the court to declare his interest in the P.O.D. account funds and to order Lowrey to turn over such interest to the court or to Dawson.[7] Lowrey specifically denied each of these allegations and sought the recovery of attorney fees from Dawson pursuant to Chapter 134 of the Texas Civil Practice and

---

form of cash or cashiers' checks, payable to himself) the sum of approximately $38,000.00. As of August 31, 2012 (the date of Pat's death), the checking account numbered 503051424 reflected a balance of $1,300.00.

[5]The trial court's final summary judgment failed to incorporate the two previous summary judgment orders. Nevertheless, the issues ruled on in each of the partial summary judgment orders are subject to review on appeal. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972) (interlocutory orders are merged into final judgment and thus become final for purposes of appeal, whether or not the interlocutory order is specifically named within final judgment).

[6]Lowrey's initial motion for summary judgment was filed with respect to the claims asserted in this petition.

[7]Dawson also sought injunctive relief in the form of a court order requiring Lowrey to turn over the disputed funds to the registry of the court until such time as rightful ownership of those funds could be determined by the court. These funds were deposited into the registry of the court pursuant to an agreed temporary order of September 21, 2012.

Remedies Code, also known as the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001–.005 (West 2011 & West Supp. 2013).

Lowrey thereafter filed a traditional motion for summary judgment pursuant to Rule 166a of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 166a. Lowrey maintained that his actions were lawfully taken pursuant to a valid, unrevoked durable power of attorney given to him by Pat. He further claimed that because Dawson would only have acquired an interest in any funds in Pat's P.O.D. savings account (9936) at the time of Pat's death and because that account was devoid of funds when Pat died, Lowrey could not have converted or otherwise stolen any interest that Dawson held in that account. Lowrey argued that no formal fiduciary relationship ever existed between him and Dawson, as no factual basis was alleged which would support the existence of such a relationship. He further claimed that no informal fiduciary relationship existed as a result of "the equitable trust relationship created in the POD account" because (1) Dawson failed to show the dealings between Lowrey and him continued sufficiently long to justify Dawson's reliance on Lowrey to act in his (Dawson's) best interests, and (2) no special relationship of trust and confidence necessary to create an informal fiduciary relationship existed between Dawson and Lowrey prior to and apart from the alleged interest in the account on which the lawsuit was based. Lowrey further argued that Dawson had no standing to bring a claim on behalf of Pat's estate against Lowrey (i.e., the breach of a formal fiduciary relationship claim based on the durable power of attorney) because Dawson was neither related to Pat at the time of Pat's death nor was he named as a devisee or beneficiary in Pat's last will and testament. Lowrey argued that no conversion claim could exist because Dawson neither owned, possessed,

5

nor had an immediate right of possession to the account funds at the time of Pat's death on August 31, 2012 (the account having been emptied and closed on August 30, 2012). Under this same reasoning, Lowrey argued that he did not violate the Texas Theft Liability Act. Finally, Lowrey argued against the imposition of a constructive trust, as this is a not a cause of action in and of itself but, rather, a mere remedy; because of this, he maintained that Dawson's causes of action must fail. On April 10, 2013, the trial court entered its order granting Lowrey's motion for summary judgment in its entirety and entering judgment in favor of Lowrey and against Dawson.[8]

Dawson filed his second amended original petition (on February 18, 2003) alleging the same causes of action as alleged in his first amended original petition, but with the additional claim of money had and received. In support of this claim, Dawson alleged that Lowrey took money that in equity and in good conscience belonged to Dawson.

In response, Lowrey filed his second motion for summary judgment, this attacking Dawson's newly pled equitable claim for money had and received. In addition to legal arguments why this claim should not prevail as a matter of law, Lowrey also argued that the

---

[8]On March 15, 2013, the trial court sent a letter to the parties indicating that Lowrey's motion for summary judgment was granted as to the claims of tortious interference with inheritance rights and conversion. The letter indicated that the court was denying Lowrey's motion on the claim under the Texas Theft Liability Act, and the claims seeking the imposition of a constructive trust and a declaratory judgment. The trial court requested that an order be prepared consistent with this ruling. The trial court wrote a second letter to the parties on the same date indicating that it inadvertently omitted ruling on Lowrey's motion seeking summary judgment on the breach of fiduciary duty claim. The court indicated that summary judgment was also granted on that claim. On March 22, 2013, the trial court sent a third letter to the parties to clarify that the motion for summary judgment on the issue of Lowrey's breach of fiduciary duty to the decedent was granted, as Dawson lacks standing to make such a claim on the decedent's behalf. On April 5, 2013, the trial court sent a letter to the parties indicating that after further consideration, it was error to deny Lowrey's motion for summary judgment in part. The court indicated that it was withdrawing its prior rulings and was granting Lowrey's first motion for summary judgment in its entirety. Counsel for Lowrey was directed to prepare an order granting the summary judgment.

6

signature card purporting to establish the P.O.D. savings account failed to substantially comply with the provisions of Section 439A of the Texas Probate Code. Accordingly, he claimed that because of what he claims to be a discrepancy between the requirements of the Probate Code and the signature card as it existed, as a matter of law, the P.O.D. account was never created. On May 22, 2013, the trial court entered its order granting Lowrey's second motion for summary judgment in its entirety.[9]

On May 8, 2013, Lowrey filed "Defendant Will Matthew Lowrey's Third Motion for Summary Judgment" asking for recovery of reasonable and necessary attorney fees incurred in the defense of Dawson's claim brought under the Texas Theft Liability Act.[10] On June 7, 2013, the trial court entered its order granting Lowrey's third motion for summary judgment, awarding attorney fees to Lowrey in defense of Dawson's Texas Theft Liability Act claim.[11]

## II.    Standard of Review

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the grant of a motion for summary judgment de novo "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v.*

---

[9]On April 19, 2013, the trial court sent a letter to the parties indicating, "Mr. Lowrey's Motion for Summary Judgment is granted." The court stated that there was no evidence that Dawson "had ownership" of the funds made the basis of the lawsuit and that such proof is required "for the element that the money belongs to the plaintiff in equity and good conscience."

[10]Lowrey attached counsel's affidavit in support of his request for attorney fees as an exhibit to this motion.

[11]Additionally, the judgment awarded appellate attorney fees to Lowrey, should Dawson's appeal be unsuccessful, and further ordered the disbursement of funds held in the registry of the Court, previously deposited pursuant to agreed temporary orders.

7

*City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Fielding*, 289 S.W.3d at 848).

In our review, we consider the evidence in the light most favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223.

Where, as here, a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify the ground or grounds upon which it was based, a party appealing that order must negate all possible grounds on which the order could have been granted. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *All Am. Siding & Windows, Inc. v. Bank of Am., Nat'l Ass'n*, 367 S.W.3d 490, 497 (Tex. App.—Texarkana 2012, pet. denied).

## III.    Analysis

### A.    The Statutory Requisites for the Creation of a P.O.D. Account Were Satisfied

Because this question has the ability to be fully dispositive of all claims, we first review Dawson's sixth appellate point (pertaining to Lowrey's claim that the P.O.D. account never actually existed because the legal requirements to establish such an account were not followed).

8

Dawson contends that the signature card establishing the P.O.D. account substantially complies with Section 439A of the Texas Probate Code and thus established a valid survivorship account.[12] Lowrey disputes this, contending that a valid P.O.D. account was never created due to a failure to conform to the dictates of the Code. Thus, he claims, the trial court's implied finding that the signature card fails to satisfy the provisions of Section 439A was correct. The signature card in question states,

> OWNERSHIP OF ACCOUNT – CONSUMER (Select one by placing your initials next to account selected.)
> UNIFORM SINGLE-PARTY OR MULTIPLE-PARTY ACCOUNT SELECTION FORM NOTICE: THE TYPE OF ACCOUNT YOU SELECT MAY DETERMINE HOW PROPERTY PASSES ON YOUR DEATH. YOUR WILL MAY NOT CONTROL THE DISPOSITION OF FUNDS HELD IN SOME OF THE FOLLOWING ACCOUNTS. [The following account was marked]
>
> . . . .
>
> X____SINGLE-PARTY ACCOUNT WITH "P.O.D." (Payable on Death) DESIGNATION
>
> . . . .
>
> NAME OR NAMES OF BENEFICIARIES:
> WILL LOWREY & JILL STEPANOVICH
> CLINTON DAWSON & BRANDY LAKE

It is undisputed that the signature card bears Pat's signature, shows the type of the account to be a P.O.D. account, and reflects Pat's correct name and address.

---

[12]Dawson also contends there are genuine issues of material fact as to the P.O.D. account signature card. This argument assumes ambiguity, leading to the consideration of extrinsic evidence. Because there is no ambiguity, this issue is properly addressed as a matter of law.

Section 439 of the Probate Code "provide[d] the exclusive means for creating . . . P.O.D. (payable on death) accounts . . . ." *Stauffer v. Henderson*, 801 S.W.2d 858, 862–63 (Tex. 1990) (citing TEX. PROB. CODE ANN. § 439(b) (West 2003)). Section 439(a) of the Probate Code provides that "an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account . . . if the agreement states in substantially the following form: 'On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate.'" TEX. PROB. CODE ANN. § 439(a) (West 2003). Section 439A, entitled "Uniform Single–Party or Multiple–Party Account Form," supplements Section 439(a)'s acceptable forms of survivorship language. *See* TEX. PROB. CODE ANN. § 439A (West 2003); *Dellinger*, 224 S.W.3d at 438. The acceptable form of survivorship language as stated in Section 439A reads, "The party to the account owns the account. On the death of the party, ownership of the account passes to the P.O.D. beneficiaries of the account. The account is not a part of the party's estate." TEX. PROB. CODE ANN. § 439A(b)(2); *see* TEX. ESTATES CODE ANN. §§ 113.051–.053 (West 2014).

Lowrey contends, in essence, that the failure to use the precise language set forth in Probate Code Section 439A is fatal to the establishment of a P.O.D. account. We are not persuaded by this argument. All that is required to make an interest "survive" to another party is a word or phrase expressing that the interest of the deceased party will survive to the surviving party. *See In re Estate of Wilson*, 213 S.W.3d 491, 494–95 (Tex. App.—Tyler 2006, pet. denied). Significantly, both Sections 439(a) and 439A contemplated that the exact language of the statute need not be employed. In this regard, Section 439(a) provided, "[A]n agreement is

10

sufficient to confer an absolute right of survivorship on parties to a joint account . . . if the agreement states in substantially the following form . . . ." TEX. PROB. CODE ANN. § 439(a); *see also Holmes v. Beatty*, 290 S.W.3d 852, 858 (Tex. 2009) (stating statutory language or substitute "in substantially the same form" is required under Section 439(a)). Similarly, Section 439A provided, "A contract of deposit that contains provisions substantially the same as in the form provided . . . establishes the type of account selected by the party." TEX. PROB. CODE ANN. § 439A (West 2003). Section 439A also stated that a financial institution may vary the format of the form and "make disclosures in the account agreement or in any other form which adequately discloses the information provided in this section." TEX. PROB. CODE ANN. § 439A(c), (d) (West 2003); *Kennemer v. Fort Worth Cmty. Credit Union*, 335 S.W.3d 843, 846 (Tex. App.—El Paso 2011, pet. denied) (tracking statutory language). In essence, under the Probate Code, the requirements for the creation of a right of survivorship to a joint account were that there be (1) a written agreement, (2) signed by the decedent, (3) which made his interest "survive" to the other party. *Kennemer*, 335 S.W.3d at 846 (citing *Dellinger*, 224 S.W.3d at 438). The agreement established must show the clear and unequivocal intent of the parties to create a survivorship account. *Wilson*, 213 S.W.3d at 495.

Here, the account application/signature card included nine choices whereby the creator of the account could specify the particular type of account to be created. Pat selected "SINGLE PARTY ACCOUNT WITH 'P.O.D.' (Payable on Death) DESIGNATION" by placing an "x" in the box next to this account designation. The remaining eight boxes next to the other types of accounts were left blank. The new account application/signature card also included a notice that

11

the type of account selected may determine how property passes on the death of the account holder. Finally, the names of the four account beneficiaries are specifically named and listed on the card. The selection of a P.O.D. account with a listing of account beneficiaries, together with the referenced notice, indicates Pat's intent to create an account with a right of survivorship in the listed account beneficiaries. Further, this information, together with the notice language utilized on the new account application/signature card, adequately discloses the information provided in Section 439A of the Probate Code. Accordingly, the trial court erred in impliedly finding that the language utilized to set up the P.O.D. account did not comply with the provisions of Section 439A of the Texas Probate Code.

Because we hold that a valid P.O.D. savings account was established, we next examine the issue of whether Dawson had standing to complain of Lowrey's actions as attorney-in-fact for Pat.

### B. Dawson Has No Standing to Sue to Seek Imposition of a Constructive Trust

To obtain the relief provided under a constructive trust, the proponent must prove, among other things, the breach of a special trust or fiduciary relationship or actual fraud. *Gray v. Sangrey*, 428 S.W.3d 311, 315 (Tex. App.—Texarkana 2014, pet. filed). Dawson did not claim actual fraud. Instead, he claimed that a fiduciary relationship existed between Pat and Lowrey, and, further, that the breach of that fiduciary relationship was unfair to him.[13] In his first amended original petition, Dawson alleges that when Lowrey used the existing power of attorney

---

[13]Dawson also initially alleged that a fiduciary relationship existed between himself and Lowrey as a result of an equitable trust relationship created in the P.O.D. account. This claim, however, was abandoned on appeal. "Appellants point out that they do not rely upon a breach of a fiduciary relationship between Appellee and Appellants." The abandonment of this claim was confirmed by counsel for Dawson at the oral argument of this case.

12

to withdraw the funds from the P.O.D. account, he breached the fiduciary duty he owed to Pat, his principal. Lowrey does not contest that he owed a fiduciary duty to Pat by virtue of the power of attorney. *See Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.—Texarkana 2001, pet. denied) (persons holding power of attorney owe fiduciary duty to transferor of that power); *see also* TEX. PROB. CODE ANN. § 489B (West 2003) (attorney-in-fact or agent is fiduciary and has duty to inform and account for actions taken under power of attorney). Instead, Lowrey argues that Dawson lacks standing to assert such a claim. Lowrey reasons that such a claim rightfully belongs to Pat's estate and that Dawson has no standing to pursue, on behalf of Pat's estate, any claims the estate might have against Lowrey. *See A&W Indus., Inc. v. Day*, 977 S.W.2d 738, 740 (Tex. App.—Fort Worth 1998, no pet.) (mere interloper has no right to intervene in administration of decedent's estate);[14] *see also Citigroup Global Mkts., Inc. v. Brown*, 261 S.W.3d 394, 396 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (estate administrators sued attorney-in-fact for deceased father claiming breach of fiduciary duty to father); *Musquiz v. Marroquin*, 124 S.W.3d 906, 908 (Tex. App.—Corpus Christi 2004, pet. denied) (estate executor sued attorney-in-fact for deceased mother claiming breach of fiduciary duty to mother). But here, Dawson has not identified any harm to Pat's estate for which he is seeking redress. Indeed, proceeds of a P.O.D. account are nontestamentary in nature. TEX. PROB. CODE ANN. § 439(b) (West 2005). Further, there is no claim that either the original

---

[14]Additionally, Lowrey argues that there is no dispute that Dawson was not related to Pat at the time of Pat's death and that Pat did not list Dawson as a divisee or beneficiary in his will. He claims that because Dawson was not an "interested person" as defined in the Probate Code, he has no standing to bring this claim. *See* TEX. PROB. CODE ANN. § 3(r) (West Supp. 2013). Under the statute, "interested person" or "person interested" means "heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered; and anyone interested in the welfare of an incapacitated person, including a minor." TEX. PROB. CODE ANN. § 3(r), § 10 (West 2003) (person interested in estate may file opposition in probate proceeding).

13

P.O.D. account or the newly established P.O.D. savings account is referenced in Pat's will. Because P.O.D. accounts are nontestamentary, there is no instrument relating to them that must be probated. Instead, Dawson seeks redress for his own damages based on the alleged breach of Lowrey's fiduciary duty to Pat. So, the trial court was faced with the issue of whether Dawson had standing to bring suit for the purpose of imposing a constructive trust on the funds once held in the P.O.D. account.[15]

In support of his position that his status as beneficiary of the P.O.D. account accords him standing to complain of Lowrey's alleged actions in violation of his fiduciary duty to Pat, Dawson relies heavily on the memorandum opinion in *In re Estate of Wallis*, No. 12-07-00022-CV, 2010 WL 1987514 (Tex. App.—Tyler May 19, 2010, no pet.) (mem. op.). In *Wallis*, Ronald Ray Wallis had designated Valerie Lewis as his attorney-in-fact and as the independent executrix of his estate. *Id.* at *1. Wallis bequeathed his residuary estate to Lewis and designated her as the beneficiary of his 401(k) retirement plan and his life insurance policy (both held by him through his employer). *Id.* Wallis later executed a new will naming Richard Shomaker as his independent executor and bequeathing his entire estate to David Lomax. *Id.* At the same time, Wallis designated Lomax as the beneficiary of his retirement plan and his life insurance

---

[15]"Standing" is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661–62 (Tex. 1996). In Texas, the standing doctrine requires that there be (1) "'a real controversy between the parties'" that (2) "'will be actually determined by the judicial declaration sought.'" *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (quoting *Nootsie*, 925 S.W.2d at 662). "'Standing focuses on . . . who may bring an action,'" *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001) (quoting *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998)), and is determined at the time suit is filed in the trial court, *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 446 n.9 (Tex. 1993). Whether a plaintiff has standing is a legal question we determine de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Because standing is a component of subject-matter jurisdiction, it cannot be waived and may be raised for the first time on appeal. *Tex. Air Control Bd.*, 852 S.W.2d at 445.

14

policy. *Id.* Against Wallis' specific instructions, someone with Wallis's employer informed Lewis of the changes in the beneficiaries of the retirement plan and the insurance policy. *Id.* Upon learning of these changes, Lewis used the powers granted her under the power of attorney and re-designated herself (without consulting Wallis) as the beneficiary of both the retirement plan and the life insurance policy. *Id.* On Wallis' death, Lomax and Shomaker sued Lewis, asserting that the change of beneficiary was outside the scope of authority granted by the power of attorney, constituted a breach of her fiduciary duty to Wallis, and resulted in Lewis' unjust enrichment. *Id.* The trial court declared the beneficiary designation forms Lewis signed void and ordered that a constructive trust be imposed on the funds from the retirement plan and the life insurance policy. *Id.*

On appeal, Lewis challenged Shomaker's and Lomax' standing to seek the imposition of a constructive trust, alleging that the fiduciary relationship that existed between her and Wallis did not "vest or somehow pass" from Wallis to Shomaker and Lomax. *Id.* at *2. In its application of common-law standing requirements to determine whether Shomaker and Lomax could sue for the imposition of a constructive trust, the court was "concerned with whether Shomaker and Lomax pleaded an injury that can be redressed through an equitable action for a constructive trust." *Id.*

In its analysis, the court recognized that the funds from Wallis' retirement plan and life insurance policy were nontestamentary, and there was no instrument relating to them which required probate proceedings to be prosecuted in order to take effect. *Id.* The court further took the position that "the beneficiary of a life insurance policy has at least an estate in anticipation

15

sufficient to authorize the beneficiary to raise the issue of the decedent's mental capacity to change the designation." *Id*. at \*3. Further, the court stated that "equity may entertain jurisdiction of a suit by an original beneficiary of a life insurance policy to set aside a decedent's change to another beneficiary on the ground of undue influence and to enjoin payment of the policy to the latter." *Id*. (citing *Tomlinson v. Jones*, 677 S.W.2d 490, 492–93 (Tex. 1984)). Because Shomaker, as the executor of the will, was a designated beneficiary of neither the retirement plan nor the life insurance policy, he had no legal claim to the funds. *Id.* Accordingly, Shomaker did not have standing to file a suit for imposition of a constructive trust. *Id*. In contrast, Lomax, as a beneficiary, "had at least an estate in anticipation" in the proceeds of the retirement plan and insurance policy. *Id.* The court determined that this "estate in anticipation" was sufficient to authorize Lomax, as the beneficiary designated by Wallis himself, to challenge the later beneficiary designation made by Lewis under the power of attorney granted to her by Wallis. *Id*. Finally, Lomax pleaded the type of injury that could be redressed through an action for a constructive trust because "[a] court of equity has jurisdiction to reach the property in the hands of a wrongdoer whenever legal title to property has been obtained through fraud, misrepresentations, concealments, or under similar circumstances that render it unconscionable for the holder of legal title to retain the interest." *Id*.

The *Wallis* court's recognition of an "estate in anticipation" was based on *Westbrook v. Adams*, 17 S.W.2d 116, 120 (Tex. Civ. App.—Fort Worth 1929).[16] *Westbrook*, like *Wallis*,

---

[16]The *Wallis* case (and reporting authorities) make the notation after the *Westbrook* case "*aff'd sub nom*., *Adams v. Bankers' Life Co*., 36 S.W.2d 182 (Tex. Comm'n App. 1931, holding approved)." It is worthy to note that although the suit to which this cite refers may have had similar parties to *Westbrook*, both cases were disputes over the same policy of insurance, and both cases resulted in reversals and remands by courts of appeal, the questions resolved in

16

involved a change in the beneficiary of a life insurance policy. *Westbrook*, 17 S.W.2d at 120. The *Westbrook* court ruled that "the beneficiary originally named has at least an estate in anticipation sufficient to authorize, it would seem, such beneficiary to raise the question of mental capacity." *Id*.

The context in which this phrase originated is far removed from the facts presented here, as this case involves neither an insurance policy nor a retirement plan (as in *Wallis*) nor the issue of mental capacity (as in *Westbrook*). Further, we find no Texas cases beyond *Westbrook* and *Wallis* which recognize such an "estate in anticipation," these two cases being the sole ones in Texas jurisprudence to use that term. *Westbrook* is the touchstone case upon which *Wallis* relies; these cases appear to be outliers because none of the cases cited in *Westbrook* for authority are cases litigated in Texas. We, therefore, decline to recognize, in this case, the existence of "an estate in anticipation" in a P.O.D. bank account. Indeed, we find no Texas authority to support the proposition that a P.O.D. account beneficiary has "an estate in anticipation" of the proceeds of that account.

Dawson also relies on *Plummer*, 51 S.W.3d at 843, to support the proposition that this Court has recognized a former P.O.D. beneficiary's standing to complain of the actions of a decedent's fiduciary. In *Plummer*, Agnes (the mother of all of the litigants) had funds which were held as certificates of deposit, some of which were P.O.D. accounts with Sandra as the beneficiary. *Id.* at 841. While Agnes was hospitalized, Sandra's siblings employed a power of attorney signed by her to cash the certificates of deposit, depositing the funds realized from this

---

the two were rather markedly different, and *Adams* did not affirm the same holdings as *Westbrook*. Accordingly, the *Westbrook* case is the sole Texas authority for the holding in *Wallis*.

into a preexisting checking account in the name of Agnes, an account in which the siblings had a right of survivorship. *Id*. The siblings testified that they consolidated the funds so that they would be available to pay for Agnes' hospital bills and for her eventual nursing home care. *Id*. at 841–42.

This Court recognized that Sandra had no vested right in the account before her mother's death and that her mother could remove her right of survivorship, could spend all of the funds, or could transfer the funds to another account if she chose to do so. The ultimate question, however, was whether Sandra's siblings violated their fiduciary duties as attorneys-in-fact for Agnes by self-dealing by transferring all of the funds to an account in which they had a right of survivorship. This Court ultimately determined that the evidence was sufficient to support the jury's verdict that the siblings complied with their fiduciary duties to Agnes. *Id*. at 844.

The issue of standing was not raised at trial or on appeal by the parties in *Plummer*. Quite understandably, the question of standing was not addressed in the opinion that was rendered. Even though it would have been proper and appropriate to have raised the issue of standing sua sponte,[17] the fact that the issue of standing was not addressed in *Plummer* does not lend support to the proposition that a stranger to a durable power of attorney has standing to question the actions of the attorney-in-fact vis-a-vis the principal. "[S]*tare decisis* does not compel [us] to follow a past decision when its rationale does not withstand 'careful analysis.'" *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 779–80 (Tex. 2011) (quoting *Arizona v. Gant*, 556 U.S. 332 (2009)).

---

[17]Standing is a component of subject-matter jurisdiction. *Tex. Air Control Bd*., 852 S.W.2d at 445.

Here, Pat appointed Lowrey as his attorney-in-fact by a durable general power of attorney which was duly signed by Pat before a notary in June 2012. The validity of this power of attorney has not been contested and is documentary evidence that Pat elected to grant Lowrey the ability to manage his finances. It is further uncontested that the transfer of account funds was accomplished via that power of attorney. Although Dawson complains of Lowrey's alleged self-dealing in the transfer of account funds, the statutory scheme establishing and governing the use of durable powers of attorney does not authorize a stranger to the ceded power to request an accounting. Although the Texas Probate Code has since been repealed, it was in effect at the time Pat executed the power of attorney in favor of Lowrey and virtually identical laws prevail under the Texas Estates Code. The Probate Code required the attorney-in-fact or agent to inform and to account to the principal for all actions taken pursuant to the power of attorney. TEX. PROB. CODE ANN. § 489B; *see also* TEX. ESTATES CODE ANN. §§ 751.101–.106. Under the statute, the principal may demand an accounting by the attorney-in-fact or agent, the details of which are outlined in the statute.[18] In drafting this statute, the Legislature limited the right to demand an accounting under a durable power of attorney to the principal; it does not expand that right to persons who might have had the potential at one time to receive largess from the principal.

In essence, Dawson claims that even though he is a stranger to the durable power of attorney, he is nevertheless legally entitled to question Lowrey's actions taken pursuant to that

_____

[18]Section 751.104 of the Estates Code includes the same requirement of accounting by the attorney-in-fact or agent to the principal of a durable power of attorney, and sets out detailed requirements of items to be included in such accounting. TEX. ESTATES CODE ANN. § 751.104.

power. We find no persuasive authority for this position. The statute specifically addresses the right to demand an accounting and limits that right to the principal. If the Legislature wanted to expand this right, it could have easily done so. To hold that a stranger to a durable power of attorney has the right (and thus standing) to question the actions of the attorney-in-fact would result in an expansion of the law. The function of the courts is to interpret and apply the law as written by the Legislature. *Fuentes v. Howard*, 423 S.W.2d 420, 423 (Tex. Civ. App.—El Paso 1967, writ dism'd). Because we find no legal basis for Dawson to question the actions of Lowrey in acting as the lawfully appointed attorney-in-fact for Pat, we conclude that Dawson lacks standing to sue for the imposition of a constructive trust.

### C.     Remaining Summary Judgment Claims

The trial court granted summary judgment with respect to Dawson's causes of action for tortious interference with inheritance rights, money hand and received, and theft.[19] Because we affirm the trial court's decision that Dawson does not have standing to sue for the imposition of a constructive trust[20] and we have determined that the lack of standing is dispositive of the other causes of action alleged by Dawson, we affirm the grant of summary judgment disposing of Dawson's remaining causes of action.

---

[19]While Dawson pled conversion, he does not appeal the trial court's grant of summary judgment on that issue.

[20]A constructive trust is a remedy—not a cause of action. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). Each of Dawson's remaining causes of action is ultimately based on Lowrey's alleged wrongful utilization of the power of attorney for his own gain, in a manner that was unfair to Dawson.

## III.  Conclusion

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice


DISSENTING OPINION

Pat Lowrey gave his son, Will Lowrey (Lowrey), a power of attorney, but he also designated his surviving beneficiaries of his bank account.  One day later, just before his father died, Lowery withdrew all the funds and closed the account.  While the power of attorney gave Lowery legal rights, he also had a fiduciary duty to his father.  No one questions that, but Lowrey argues that Dawson has no standing to enforce the alleged breach of that fiduciary relationship.  I believe this Court, at least inferentially, found standing in a similar situation in *Plummer*.  The Tyler court in *Wallis* has expressly found standing to exist in this situation.  Consequently, I believe the weight of authority supports a determination that Dawson has standing to pursue this claim for breach of fiduciary duty.

The facts of *Plummer v. Estate of Plummer* and *In re Estate of Wallis* are set out in the majority opinion and will not be repeated.  *Plummer v. Estate of Plummer*, 51 S.W.3d 840 (Tex. App.—Texarkana 2001, pet. denied); *In re Estate of Wallis*, No. 12-07-00022-CV, 2010 WL 1987514 (Tex. App.—Tyler May 16, 2010, no pet.) (mem. op.).  In *Plummer*, this Court

21

ultimately found that evidence was sufficient to support a jury verdict that siblings who withdrew money by authority of a power of attorney did not breach their fiduciary duty. In order to reach that conclusion, it was necessary to determine that the challenging party had standing. While it was not expressly stated, a finding of standing was a necessary prerequisite to this Court's holding.

The Tyler court was directly confronted with this issue in *Wallis*. In *Wallis*, it was determined that the beneficiary designated by Wallis had an estate in anticipation in the proceeds of the retirement plan and insurance policy giving her standing to pursue the breach of fiduciary duty claim. The only distinction the majority opinion makes between *Wallis* and the cases it relies on is that Wallis originated from an insurance policy and retirement plan rather than a payable on death bank account. I fail to see what difference that makes as each involves nontestamentary dispositions with designated survivor beneficiaries.

I would find Dawson has standing to pursue this claim, reverse the summary judgment, and remand to the trial court for further determination of the alleged breach of fiduciary duty. I respectfully dissent.

Jack Carter
Justice

Date Submitted:     June 3, 2014
Date Decided:       July 29, 2014

22

| PROBATE CODE | SESSIONS LAW CITATION | ESTATES CODE |
|---|---|---|
| T<small>EX</small>. P<small>ROB</small>. C<small>ODE</small> A<small>NN</small>. § 3(r) | Texas Probate Code, 54th Leg., R.S., ch. 55, § 1, sec. 3(r), 1955 Tex. Gen. Laws 88, 90, *amended by* Act of March 28, 2007, 80th Leg., R.S., ch. 1171, § 1.01, sec. 3(r), 2007 Tex. Gen. Laws 4000, 4000, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | T<small>EX</small>. E<small>STATES</small> C<small>ODE</small> A<small>NN</small>. § 22.018 |
| T<small>EX</small>. P<small>ROB</small>. C<small>ODE</small> A<small>NN</small>. § 10 | Texas Probate Code, 54th Leg., R.S., ch. 55, § 1, sec. 10, 1955 Tex. Gen. Laws 88, 93, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | T<small>EX</small>. E<small>STATES</small> C<small>ODE</small> A<small>NN</small>. § 55.001 |
| T<small>EX</small>. P<small>ROB</small>. C<small>ODE</small> A<small>NN</small>. § 439(a) | Act of May 17, 1979, 66th Leg., R.S., ch. 713, § 31, sec. 439, 1979 Tex. Gen. Laws 1740, 1758, *amended by* Act of May 25, 1987, 70th Leg., R.S., ch. 297, § 1, sec. 439(a), 1987 Tex. Gen. Laws 1667, 1667, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731 and Act of May 29, 2011, 82d Leg., R.S., ch. 1338, § 2.54(b)(1), 2011 Tex. Sess. Law Serv. 3884, 3935. | T<small>EX</small>. E<small>STATES</small> C<small>ODE</small> A<small>NN</small>. § 113.151 |
| T<small>EX</small>. P<small>ROB</small>. C<small>ODE</small> A<small>NN</small>. § 439(b) | Act of May 17, 1979, 66th Leg., R.S., ch. 713, § 31, sec. 439, 1979 Tex. Gen. Laws 1740, 1758, *amended by* Act of May 28, 1993, 73d Leg., R.S., ch. 846, § 26, sec. 439(b), 1993 Tex. Gen. Laws 3337, 3348, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731 and Act of May 29, 2011, 82d Leg., R.S., ch. 1338, § 2.54(b)(1), 2011 Tex. Sess. Law Serv. 3884, 3935. | T<small>EX</small>. E<small>STATES</small> C<small>ODE</small> A<small>NN</small>. § 113.152 |
| T<small>EX</small>. P<small>ROB</small>. C<small>ODE</small> A<small>NN</small>. § 439A | Act of May 24, 1993, 73d Leg., R.S., ch. 795, § 2, sec. 439A, 1993 Tex. Gen. Laws 3154, 3154, *amended by* Act of May 22, 2003, 78th Leg., R.S., ch. 658, § 2, 2003 Tex. Gen. Laws 2062, 2062, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 929, § 2, 2009 Tex. Gen. Laws 2472, 2472, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | T<small>EX</small>. E<small>STATES</small> C<small>ODE</small> A<small>NN</small>. §§ 113.051–.53 |

TABLE 1
**Table of Citations**
*Dawson, et al. v. Lowrey*, 06-13-00107-C

| PROBATE CODE | SESSIONS LAW CITATION | ESTATES CODE |
|---|---|---|
| TEX. PROB. CODE ANN. § 439A(a) | Act of May 24, 1993, 73d Leg., R.S., ch. 795, § 2, sec. 439A(a), 1993 Tex. Gen. Laws 3154, 3154, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 929, § 2, 2009 Tex. Gen. Laws 2472, 2472, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | TEX. ESTATES CODE ANN. § 113.051 |
| TEX. PROB. CODE ANN. § 439A(b)(2) | Act of May 24, 1993, 73d Leg., R.S., ch. 795, § 2, sec. 439A(b)(2), 1993 Tex. Gen. Laws 3154, 3155, *amended by* Act of May 22, 2003, 78th Leg., R.S., ch. 658, § 2, 2003 Tex. Gen. Laws 2062, 2062, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 929, § 2, 2009 Tex. Gen. Laws 2472, 2472, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | TEX. ESTATES CODE ANN. § 113.052 |
| TEX. PROB. CODE ANN. § 439A(c) | Act of May 24, 1993, 73d Leg., R.S., ch. 795, § 2, sec. 439A(c), 1993 Tex. Gen. Laws 3154, 3156, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | TEX. ESTATES CODE ANN. § 113.053 |
| TEX. PROB. CODE ANN. § 439A(d) | Act of May 24, 1993, 73d Leg., R.S., ch. 795, § 2, sec. 439A(d), 1993 Tex. Gen. Laws 3154, 3156, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, § 10(a), 2009 Tex. Gen. Laws 1512, 1731. | TEX. ESTATES CODE ANN. § 113.053 |
| TEX. PROB. CODE ANN. §§ 481–506 | Durable Power of Attorney Act, 73d Leg., R.S., ch. 49, § 1, 1993 Tex. Gen. Laws 102, *repealed by* Act of May 19, 2011, 82d Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094. | TEX. ESTATES CODE ANN. §§ 751.001–.006, 751.051–.058, 751.101–.106, 751.151 |
| TEX. PROB. CODE ANN. § 489B | Act of May 25, 2001, 77th Leg., R.S., ch. 1056, § 1, sec. 489B, 2001 Tex. Gen. Laws 2336, *repealed by* Act of May 19, 2011, 82d Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094. | TEX. ESTATES CODE ANN. §§ 751.005–.006, 751.101–.106 |
| TEX. PROB. CODE ANN. § 489B(d) | Act of May 25, 2001, 77th Leg., R.S., ch. 1056, § 1, sec. 489B(d), 2001 Tex. Gen. Laws 2336, 2336, *repealed by* Act of May 19, 2011, 82d Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094. | TEX. ESTATES CODE ANN. § 751.104 |

24

TABLE 1
**Table of Citations**
*Dawson, et al. v. Lowrey*, 06-13-00107-C

| PROBATE CODE | SESSIONS LAW CITATION | ESTATES CODE |
|---|---|---|
| TEX. PROB. CODE ANN. § 489B(e) | Act of May 25, 2001, 77th Leg., R.S., ch. 1056, § 1, sec. 489B(e), 2001 Tex. Gen. Laws 2336, 2337, *repealed by* Act of May 19, 2011, 82d Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094. | TEX. ESTATES CODE ANN. § 751.104 |